**Sheryl G. HEYNE, aka Sheryl G. Hill, Plaintiff–Appellant,**

v.

**Mario CARUSO, individually, and in his capacity as Trustee for The Mario Caruso & Anneliese Caruso Revocable Family Trust, Defendant–Appellee.**

No. 94–15124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1995.

Decided Nov. 8, 1995.

Richard Segerblom, Las Vegas, Nevada, for plaintiff-appellant.

Theresa M. Dowling, Las Vegas, Nevada, for defendant-appellee.

Before: CHOY, CANBY, and FERNANDEZ, Circuit Judges.

CHOY, Circuit Judge:

Sheryl G. Heyne ("Heyne") appeals a jury verdict in favor of the defendant, Mario Caruso ("Caruso"), in her action alleging quid pro quo sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e17. Heyne argues that the district court erred by excluding testimony of other female employees who allegedly were sexually harassed by Caruso. Heyne further claims that the district court erred by forbidding the introduction of a probable cause finding by the Nevada Equal Rights Commission ("NERC").

## I

Heyne began working as a waitress at the Vale Motel Restaurant in Boulder City, Nevada on September 24, 1986. On November 12, 1986, Caruso, who owned and operated the restaurant as a trustee for the Mario Caruso & Anneliese Caruso Revocable Family Trust, discharged Heyne allegedly because she was late for work on two consecutive days. Heyne challenges Caruso's stated reason, asserting that during the three months that she worked at the Vale Motel Restaurant, Caruso subjected her to both verbal and physical sexual harassment and that he ultimately fired her because she refused his sexual advances.

Heyne worked the day shift and was sometimes asked to open the restaurant. On the days that she was required to open the restaurant, she was to report to work at 5:30 a.m. so that the restaurant could be opened for business by 6:00 a.m. On the morning of November 11, 1986, Heyne was late arriving at the restaurant, and the restaurant had to be opened by other employees. She was warned on that day that if she were late again, she would be terminated.

On the night of November 11, 1986, Heyne alleges that Caruso came to the trailer park where she lived, entered her mobile home, and propositioned her for sex. When Heyne told him that she wasn't interested, Caruso left. Caruso counters that he went to Heyne's home to remind her to come to work early the following day and denies propositioning her. On November 12, 1986, Heyne was again late for work, and Caruso fired her.

On February 17, 1987, Heyne filed a discrimination suit with the NERC and the Equal Employment Opportunity Commission ("EEOC"). After conducting an investigation, the NERC found probable cause and set the matter for public hearing. In its investigative report, the NERC listed six witnesses who claimed either to have witnessed or to have been subjected to sexual harassment by Caruso.

Heyne waived the NERC hearing and opted to file a complaint in the United States District Court for the District of Nevada on July 8, 1992. Heyne proceeded on a quid pro quo sexual harassment theory, alleging that Caruso terminated her employment because she had refused his sexual advances. Prior to trial, Caruso filed a motion in limine seeking to exclude evidence of his alleged sexual harassment of other female employees on the basis that such evidence was not probative of quid pro quo sexual harassment. Specifically, Caruso sought to exclude the testimony of Joann Kimball–Kenniston, Marty Guerney, Tanya Jenkins, Lisa Katchadoorian, and Bonnie Smith.

The district court granted Caruso's motion and prevented Heyne from offering testimony regarding Caruso's alleged harassment of other female employees. The district court reasoned that such testimony, while relevant to a hostile work environment claim, was more prejudicial than probative of a quid pro quo sexual harassment claim. However, the district court allowed testimony directly rele-

vant to Caruso's alleged sexual harassment of Heyne.

At trial, Janice Lehman, who worked with Heyne, testified that she had witnessed Caruso touching Heyne inappropriately. Her testimony, however, was brought into question by Caruso who introduced photographic evidence which allegedly demonstrated that Lehman could not have observed Caruso's hand on Heyne's thigh from her vantage point. No other witnesses testified to observing Caruso sexually harass Heyne.

The district court also declined to allow the introduction in evidence of the NERC probable cause finding and refused to allow Heyne's counsel to mention the finding in either the opening argument or during the trial. The parties ultimately stipulated to a jury instruction which mentioned the NERC probable cause finding. The instruction explained that the finding was made prior to conducting a public hearing but that no hearing was held because Heyne withdrew her charges.

On November 30, 1993, following a two-day trial, the jury returned a verdict in favor of Caruso. Heyne timely appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

■ Heyne contends that the district court erred when it refused to admit the testimony of other female employees who claimed to have been harassed by Caruso. We review the district court's evidentiary rulings for an abuse of discretion. *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 887 (9th Cir.1991). To order a reversal on the basis of an erroneous evidentiary ruling, we must find not only that the district court abused its discretion but also that the error was prejudicial. *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir.1988). Reversal of a jury verdict is not warranted unless the evidentiary error affects a party's substantial rights. *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir. 1986).

## III

■ Sexual harassment is a form of sex discrimination prohibited by Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Supreme Court has developed a mechanism for allocating the burden of production in a Title VII trial. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). First, the complainant in a Title VII trial must present a prima facie case of sexual harassment. *Id.* at 802, 93 S.Ct. at 1824. Once the complainant has made a prima facie showing, the burden shifts back to the employer to articulate a legitimate nondiscriminatory reason for the employee's termination. *Id.* If the employer supplies a legitimate reason, the employee must be given an opportunity to show that the employer's reason is merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

■ In order to establish a prima facie case of quid pro quo sexual harassment, a complainant must show that an individual "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir.1994).[1] More explicitly, the EEOC guidelines define quid pro quo sexual harassment as:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature … when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. …

*See* 29 C.F.R. § 1604.11(a)(1)–(a)(2) (1994).

Heyne made a prima facie showing of quid pro quo sexual harassment: She testified that she was propositioned for sex by the owner of the restaurant where she worked,

---

1. The two other judges on the *Nichols* panel did not concur in Judge Reinhardt's proposed test for quid pro quo sexual harassment because they found the test unnecessary to the determination of the case. *Nichols,* 42 F.3d at 516. Today, we explicitly adopt Judge Reinhardt's proposed test.

that she refused the proposition, and that she was fired the following day. Caruso, in turn, has stated a legitimate reason for her discharge—that Heyne was late in opening up the restaurant on two consecutive mornings.

According to the *McDonnell Douglas* burden-shifting mechanism, Heyne was to be given a fair opportunity to show that Caruso's stated reason was pretextual and that his real reason for firing her was that she had refused his sexual advances. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Heyne should have been given "a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for [her] rejection were in fact a coverup for a ... discriminatory decision." *Id.* at 805, 93 S.Ct. at 1825.

Heyne sought to introduce testimony of other female employees, who allegedly were sexually harassed by Caruso, in order to demonstrate that Caruso's proffered reason for her dismissal was pretextual. Specifically, Heyne attempted to introduce the testimony of Kimball–Kenniston, Guerney, Jenkins, Katchadoorian, and Smith.[2] Caruso opposed the introduction of these women's testimony, arguing that such testimony, while relevant to prove hostile work environment, was more prejudicial than probative for a quid pro quo sexual harassment claim.[3] Caruso argued that the district court should allow only testimony of persons who actually witnessed his alleged harassment of Heyne. The district court ruled in Caruso's favor, holding that other female employees could

not testify regarding their own experiences of sexual harassment or discrimination by Caruso.

Federal Rule of Evidence 401 defines relevant evidence as:

> [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed.R.Evid. 401. Evidence of other crimes, wrongs, or acts is admissible to prove motive or intent. *See* Fed.R.Evid. 404(b). Such evidence, however, must be more probative than prejudicial in order to be admissible. *See* Fed.R.Evid. 403.

■ It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group. *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir.1990) ("As a general rule, the testimony of other employees about their treatment by the defendant [employer] is relevant to the issue of the employer's discriminatory intent."). Recognizing that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), the Supreme Court held that evidence of the employer's discriminatory attitude *in general* is

---

**2.** The district court had notice of the purpose and substance of the testimony as to four of the five witnesses:

Lisa Katchadoorian in her deposition stated that Caruso told dirty jokes. She allegedly heard Caruso asking "Joann" to take a jacuzzi with him and allegedly saw Caruso at times "walk up close to [Heyne], rub up on her arm or whatever...." (Docket No. 31, Exh. 11). Katchadoorian, however, stated that she did not think what Caruso did was sexual harassment. (Docket No. 29, Exh. D).

Joann Kimball–Kenniston submitted an affidavit in which she stated that Caruso made sexually offensive remarks and jokes and kissed her against her wish. She stated that she was forced to quit work because of Caruso's harassment. (Docket No. 31, Exh. 4).

Bonnie Smith's statement appeared in the NERC Investigative Report which had been sub-

mitted to the district court. (Docket No. 31, Exh. 5). In a phone conversation with the investigator on April 21, 1987, she stated that Caruso made vulgar remarks and often tried to get her and other female employees in compromising positions.

Marty Guerney's statement does not appear to support Heyne's claim of sexual harassment. In an affidavit submitted on December 22, 1992, Guerney stated that she did not know anything about Caruso sexually harassing Heyne or any other employee at the Vale Hotel. (Docket No. 29, Exh. C).

The record does not make clear to what Tanya Jenkins would have testified. (Docket No. 61).

**3.** Caruso also timely objected to Smith and Jenkins testifying at trial because the two witnesses were not available during discovery.

relevant and admissible to prove race discrimination. *See id.* at 713–14 n. 2, 103 S.Ct. at 1480–81 n. 2.

The Eighth Circuit, in an action for wrongful termination on the basis of race, likewise found that "[e]vidence of prior acts of discrimination is relevant to an employer's motive in discharging a plaintiff, even where this evidence is not extensive enough to establish discriminatory animus by itself." *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1104 (8th Cir.1988). Estes, who is black, alleged that his employer, Ford, terminated him on the basis of his race, and Ford countered by claiming that Estes was fired for cause. *Id.* at 1100. Estes appealed the district court's evidentiary rulings which excluded a great deal of evidence tending to show a climate of racial bias at the plaintiff's place of employment. *Id.* The Eighth Circuit reversed the district court's evidentiary rulings, holding that statistical evidence tending to show that Ford discriminated against Blacks in hiring and promotion, evidence of prior acts of discrimination against black customers, and evidence of a Ford manager telling racist jokes and referring to black customers and Estes as "niggers" were relevant to proving the employer's motivation behind discharging Estes. *Id.* at 1102–04.

Similarly, we recently held that evidence of an employer's sexual harassment of female employees other than the plaintiff and evidence of the employer's disparaging remarks about women in general were relevant to a discriminatory discharge claim which alleged that the plaintiff's discharge was motivated by the employer's general feeling of hostility towards women. *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 897–98 (9th Cir.1994).

■ In light of these cases, we evaluate the propriety of introducing in evidence the employer's alleged sexual harassment of employees other than the plaintiff to prove the employer's motive behind firing the plaintiff in a quid pro quo sexual harassment claim. At the outset, we note that Caruso's alleged harassment of other female employees cannot be used to prove that Caruso propositioned Heyne on the night before she was fired. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissi-

ble to prove the character of a person in order to show action in conformity therewith.").

Evidence of Caruso's sexual harassment of other female workers may be used, however, to prove his motive or intent in discharging Heyne. *See id.* The sexual harassment of others, if shown to have occurred, is relevant and probative of Caruso's general attitude of disrespect toward his female employees, and his sexual objectification of them. That attitude is relevant to the question of Caruso's motive for discharging Heyne. *Cf. EEOC v. Farmer Bros. Co.,* 31 F.3d at 897–98 (attitude of hostility toward women relevant to motive of gender discrimination in discharging female employee).

■ Other courts have concluded that testimony of sexual harassment by the defendant-employer of female employees other than the plaintiff, is admissible to prove employer's motive in a quid pro quo sexual harassment case. *See, e.g., Phillips v. Smalley Maintenance Serv., Inc.,* 711 F.2d 1524, 1532 (11th Cir.1983) (holding that the testimony of a former female employee, who allegedly was subjected to sexually harassing behavior by the defendant-employer, was relevant and admissible in accordance with the Federal Rule of Evidence 404(b) to prove the employer's motive in a quid pro quo sexual harassment action); *Sowers v. Kemira, Inc.,* 701 F.Supp. 809, 816 (S.D.Ga.1988) (allowing the testimony of two other employees, alleging that the employer had made inappropriate sexual advances towards them, in a quid pro quo sexual harassment suit in which the plaintiff claimed that her promotion was conditioned upon her acceptance of her employer's sexual advances).

The probative value of the employer's sexual harassment of other female employees is especially high "because of the inherent difficulty of proving state of mind." *Cf. Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1133 (4th Cir.1988) (holding that use of racial slurs by members of a fire company is admissible to prove the company's motive in excluding black applicant from membership). However, we must exclude the evidence if the danger of unfair prejudice

outweighs its probative value. *See* Fed. R.Evid. 403. Unfair prejudice is "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Mullen,* 853 F.2d at 1134.

There is no unfair prejudice, however, if the jury were to believe that an employer's sexual harassment of other female employees made it more likely that an employer viewed his female workers as sexual objects, and that, in turn, convinced the jury that an employer was more likely to fire an employee in retaliation for her refusal of his sexual advances. There is a direct link between the issue before the jury—the employer's motive behind firing the plaintiff—and the factor on which the jury's decision is based—the employer's harassment of other female employees.

The district court can limit the potential unfair prejudice that may result if the jury allows the employer's sexual harassment of other female employees to influence its decision on whether the employer sexually propositioned the employee. The district court may provide safeguards, such as a limiting jury instruction to the effect that the sexual harassment testimony is to be considered only for the determination of the employer's motive. *See Phillips,* 711 F.2d at 1532 (noting with approval the district court's instruction to the fact-finder that the testimony of a female employee other than the plaintiff, alleging sexual harassment by the employer, was relevant only as to the employer's reason for dismissing the plaintiff).

We find that the district court erred by excluding evidence of Caruso's harassment of other female employees. The district court's evidentiary ruling excluding such testimony significantly hampered Heyne in her efforts to challenge Caruso's asserted motive. *See Mullen,* 853 F.2d at 1133; *see also Estes,* 856 F.2d at 1103 (stating that the trial court's exclusion of the employer's general treatment of Blacks was especially damaging in a race discrimination claim "in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of its own motives."). Heyne should have been permitted to introduce evidence of

Caruso's sexual harassment of other employees in order to rebut Caruso's proffered reason for terminating her.

■ Caruso next argues that Heyne cannot offer the testimony of other employees in evidence because she failed to make an offer of proof at trial regarding the substance and purpose of the testimony. Normally, counsel must make an offer of proof to show the substance of the proffered evidence and to demonstrate the purpose for which the evidence is introduced. *See Pau,* 928 F.2d at 887. A proper offer of proof informs the trial court of what counsel expects to prove by the excluded evidence and preserves the record so that an appellate court can review the trial court's decision for reversible error. *See* Jack B. Weinstein, 1 *Weinstein's Evidence* ¶ 103[03], at 103–50 (1994).

■ The lack of an offer of proof, however, is excused where "an entire class of evidence has been in advance formally declared inadmissible by the trial court during preliminary argument or colloquy, for the court's ruling relates forward to all possible offers of such evidence and renders them needless." *Garner v. Santoro,* 865 F.2d 629, 636 (5th Cir.1989) (quoting John H. Wigmore, 1 *Wigmore on Evidence* § 17, at 766 (Tillers rev. 1983) ("Wigmore") (footnote omitted)). In *Garner,* the Fifth Circuit excused the appellant's failure to make an offer of proof regarding a government contractor defense because, prior to trial, the district court had prohibited the defendant from making that defense. *Garner,* 865 F.2d at 636–37.

Likewise, in *Greatreaks v. United States,* 211 F.2d 674, 676 (9th Cir.1954), we excused the defendant's failure to make a further offer of proof on a quarrel between the defendant and a police officer because the trial court had announced in advance that it would not receive evidence concerning that quarrel. The defendant sought to introduce the quarrel to discredit the officer's testimony alleging that the defendant had bribed the officer. We added that after such an exclusionary ruling, "the persistence of counsel in making or repeating such offers may be treated as improper attempts to get before the jury the

effect of such evidence." *Id.* (quoting Wigmore, § 17, at 767).

■ In this case, the district court granted Caruso's motion in limine prior to the jury trial. The motion in limine requested an exclusion of "any and all testimony by the listed witnesses of Sheryl Hill Heyne at trial that does not address specifically Sheryl Hill's [sic] claim of Quid Pro Quo sexual harassment" and sought to eliminate testimony probative of hostile work environment rather than quid pro quo sexual harassment. Caruso specifically named Kimball–Kenniston, Guerney, Jenkins, Katchadoorian, and Smith from Heyne's list of witnesses in her amended joint pre-trial order as witnesses who, he claimed, could not testify regarding Heyne's quid pro quo sexual harassment claim.

In her opposition to the motion in limine, Heyne generally outlined the substance and purpose of these witnesses testimony by stating that the witnesses were going to testify to an atmosphere of condoned sexual harassment in order to prove Caruso's discriminatory motive. Heyne, however, neither named specific witnesses nor outlined the exact content of each witness's testimony.[4]

Evidently, the district court did not have trouble understanding the substance of the proffered testimony or the purpose for which they were offered because the district court ruled on the motion in limine, granting a blanket exclusion on all testimony not directly probative of Caruso's harassment of Heyne. The record indicates that the district court had notice of the purpose and substance of the testimony as to four of the five witnesses that Caruso specifically sought to eliminate through his motion in limine. In particular, the record indicates that Katchadoorian, Kimball–Kenniston, and Smith

would have testified either to their own alleged experiences of sexual harassment by Caruso or to their observation of Caruso harassing other employees.[5] However, Guerney, according to her affidavit, would not have testified in support of Heyne's sexual harassment claim. (Docket No. 29, Exh. C).

After the district court excluded all evidence of sexual harassment at the workplace not directly relevant to Caruso's alleged harassment of Heyne, Heyne was not required to make a specific offer of proof on the exact substance and purpose of each witness's testimony in order to preserve the issue for appeal. *See Garner,* 865 F.2d at 636–37; *see also Greatreaks,* 211 F.2d at 676.

■ The district court abused its discretion by refusing to allow Heyne to introduce testimony of Caruso's other female employees who claimed to have been sexually harassed by him. Such testimony would have affected the jury's determination of whether Heyne's dismissal was motivated by a non-discriminatory reason, her tardiness, or for a forbidden reason, her rejection of Caruso's sexual advances. The exclusion of such evidence tainted the verdict in light of the apparent closeness of the decision.[6]

## IV

Next, Heyne argues that the district court erred by refusing to admit the NERC probable cause finding in evidence and waiting until the jury instructions to mention the finding. We review the district court's decision to exclude the NERC finding of probable cause for an abuse of discretion. *See Gilchrist,* 803 F.2d at 1499 (reviewing the admission of an EEOC letter of violation for an abuse of discretion).

---

4. Although never officially presented to the district court, the substance of the witnesses's testimony can be found in the record. *See supra,* n. 2.

5. *See supra,* n. 2.

6. The closeness of the decision is suggested by the jury's initial verdict. The jury verdict form contained two questions. The first was, whether Caruso terminated Heyne because she rejected

his alleged sexual advances. If the jury answered the first question affirmatively, then it was to answer the second question of whether Caruso fired Heyne with malice or with reckless indifference to Heyne's federally protected right. When the jury returned its initial verdict, it had answered "no" to the first question but "yes" to the second. The jury ultimately answered "no" to both questions after it was instructed to reconsider its decision.

Heyne does not challenge the exclusion of the NERC investigative report but limits her appeal to the district court's exclusion of the NERC probable cause finding. Heyne notified the district court, prior to trial, of her intent to introduce the NERC probable cause finding in evidence. The district court's awareness of Heyne's intent is evidenced by the court's pre-trial discussion with Heyne's counsel regarding the admissibility of the probable cause finding. Therefore, we conclude that Heyne made an offer of proof for the probable cause finding.

■ Caruso argues that the district court properly exercised its discretion in excluding the NERC probable cause finding. We disagree. We have held that it is reversible error for the district court to exclude an EEOC probable cause determination from a Title VII trial. *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 504 (9th Cir.1981). We have also concluded that the probative nature of the EEOC probable cause determination far outweighs the prejudicial effect it may have on a jury. *Gilchrist,* 803 F.2d at 1500.

Caruso attempts to rely upon *Gilchrist* to escape our *Plummer* mandate. In *Gilchrist,* we ruled that the district court must exercise discretion over the admission of an EEOC letter of violation, a final ruling rather than a probable cause determination. We noted that there was a significant difference between a letter of violation and a probable cause determination.

> In a letter of violation the EEOC concludes that a violation of the Act has occurred, whereas in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of Title VII has occurred. A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation.

*Id.* We went on to find that there was a greater possibility of prejudice involved in introducing a letter of violation in evidence and ruled that the district judge in such a case should exercise discretion. The NERC determination of probable cause, unlike the EEOC letter of violation in *Gilchrist,* is a preliminary investigative determination more

like the EEOC reasonable cause determination in *Plummer.*

Caruso alternatively argues that the NERC finding is not the official finding of the EEOC, and therefore, the trial court was not obligated to allow it in evidence. We recognized in *Plummer* that "while prior *administrative* determinations are not binding, they are admissible evidence." *Plummer,* 656 F.2d at 504 (emphasis added). Thus, the *Plummer* ruling is not restricted solely to *EEOC* findings of probable cause but extends to similar administrative determinations, including NERC findings. The district court committed reversible error by excluding the NERC finding of probable cause from evidence. *See id.* at 504.

In another attempt to distinguish the findings of the NERC from the EEOC, Caruso points out that Nevada law protects the confidentiality of the NERC reports while there are no equivalent provisions guarding the confidentiality of EEOC reports. Nevada law states:

> All information gathered by the commission ... is confidential until the commission has determined to conduct a hearing on the matter.... If the commission's attempts at mediating or conciliating the cause of the grievance succeed, the information shall remain confidential. If the commission proceeds with a hearing or applies for injunctive relief, confidentiality concerning any information except negotiations for a settlement is no longer required.

Nev.Rev.Stat. § 233.190. Caruso's attempt to distinguish the reports of the NERC from the EEOC is not persuasive because whether information gathered for purposes of a probable cause determination is kept confidential does not affect the probative or prejudicial effect of introducing a finding of probable cause itself at trial.

Alternatively, Caruso argues that section 233.190 prohibited Heyne from receiving the investigative report in the first place and thus, the report must be excluded from evidence. However, section 233.190 states that the report must be kept confidential until the NERC has determined to conduct a hearing

on the matter. Once the NERC has determined to conduct a hearing on the matter, the report is no longer confidential, and section 233.190 does not state that the evidence collected for the hearing regains its confidentiality if the hearing is ultimately cancelled.

Next, Caruso argues that a mention of the NERC finding of probable cause in the jury instructions satisfies our mandate regarding the admissibility of administrative determinations outlined in *Plummer*. We disagree. The fact that the NERC findings were mentioned for the first time during the closing argument sufficiently detracted from its significance as to taint the verdict. "A civil rights plaintiff has a difficult burden of proof, and should not be deprived of what may be persuasive evidence." *Plummer*, 656 F.2d at 505.

Caruso next asserts that Heyne's stipulation to jury instruction 8, which alerted the jury to the NERC finding of probable cause, prevents her now from asserting a challenge to the district court's decision to exclude the NERC probable cause finding from evidence. The record indicates that Heyne's counsel repeatedly inquired about introducing the NERC finding in evidence and his requests were continually denied by the district court. Heyne's counsel was given no choice but to stipulate to the jury instruction in order to get the probable cause determination in front of the jury at all.[7]

In conclusion, we find that the district court abused its discretion by excluding the NERC probable cause determination from evidence.

## V

We **REVERSE** the district court's evidentiary ruling excluding the testimony of other female employees and its ruling excluding the NERC probable cause finding. We **VACATE** the jury verdict and **REMAND** for a

new trial with instructions to allow in the testimony of other female employees as they relate to Caruso's motivation in terminating Heyne and to admit the NERC probable cause finding in evidence.

**REVERSED, VACATED, AND REMANDED.**

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in Part IV of the majority opinion, but I dissent from Part III.

This case turns on the credibility of Heyne's assertions that she was fired for refusing sexual advances rather than for wrongfully failing to come to work on time. She was the one who was supposed to open the restaurant, and for two days in a row she was not there to do it. The first day she had been told that she would be fired next time, yet she still did not appear the next day. The evidence of prior sexual advances by Caruso was, on the other hand, entirely devoid of any hint that he ever took action against his female employees when he was rejected. At oral argument, Heyne's counsel conceded that there was no evidence that he did so.

Evidence of Caruso's bad actions and poor attitude has some relevance to this case because a circumstantial reasoning process could lead to the conclusion (reached by the majority) that a person with that poor an attitude about women might fire someone for refusing his advances. That may come parlously close to mere character evidence, but it is a bit more than that. Nevertheless, given the unique evidentiary posture of this quid pro quo case, I am unable to say that the district court abused its discretion when it excluded the evidence of Caruso's prior acts.[1] It was well within the district court's discretion to decide that, in this case, the

---

7. Finally, Caruso asserts two procedural grounds which prevent Heyne from challenging the exclusion of the NERC investigative report: (1) Heyne failed to make an offer of proof regarding the report at trial; (2) Heyne failed to call a witness to lay a foundation for the NERC report. We decline to address Caruso's argument because Heyne does not challenge the exclusion of the NERC investigative report.

1. I assume, along with the majority, that the district court did exercise its discretion, even though it did not specifically say it was doing so. *See, e.g., United States v. Robertson*, 15 F.3d 862, 872–73 (9th Cir.1994), *rev'd on other grounds*, —— U.S. ——, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995).

evidence was far more unfairly prejudicial than it was probative. Fed.R.Evid. 403; *see Monotype Corp. PLC v. International Type-face Corp.*, 43 F.3d 443, 448–50 (9th Cir. 1994); *United States v. Hitt*, 981 F.2d 422, 423–25 (9th Cir.1992); *United States v. Calhoun*, 604 F.2d 1216, 1219 (9th Cir.1979). At least by now, our society is rightly disgusted by a man who acts as Caruso is said to have acted. But his restraint as far as any retribution is concerned shows that the connection between any improper behavior and retaliation is rather tenuous in this case.

In other words, because the evidence in question was relevant, the district court had to exercise discretion in determining whether it should be admitted. On these facts, the court could well have decided in favor of admission or against it and still have decided correctly—of course, that's what discretion often means. The district court decided against admission. I would not reverse that determination, just as I would not have reversed if the court had reached the opposite conclusion. Neither determination would, on these facts, constitute a clear error of judgment. Neither would exceed the bounds of permissible choice. Neither would show arbitrary or irrational action. *See United States v. Ford*, 632 F.2d 1354, 1377 (9th Cir.1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255 (9th Cir.1984) (en banc). Finally, neither would be against logic or constitute a plain error. *See United States v. Tercero*, 640 F.2d 190, 197 (9th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).[2]

Therefore, I concur in part but respectfully dissent in part.

---

**2.** Lest there be any doubt about the scope of this dissent, I must specifically add that I see no reason to adopt Judge Reinhardt's separate opinion in *Nichols v. Frank*, 42 F.3d 503 (9th Cir. 1994) regarding the proper test for quid pro quo sexual harassment. Adoption of that test is not required for the purpose of resolving this case.