David Shanon GALLANT, Plaintiff,

v.

BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY; James May, an individual, Defendants.

No. C97–0376 BZ.

United States District Court, N.D. California.

March 27, 1998.

Robert E. Lazo, San Francisco, CA, for Plaintiff.

Michael T. Lucey, Greta Schnetzler, Larry E. Wollert, II, Gordon & Rees, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZIMMERMAN, United States Magistrate Judge.

Defendants the Board of Trustees of California State University and James May ("defendants") have moved for summary judgment pursuant to Fed. R. Civ. Pro. ("Rule") 56. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment pursuant to 28 U.S.C. § 636(c).

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Rule 56(c). A genuine issue of material fact exists if a reasonable jury could return a verdict in favor the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court does not make credibility determinations or weigh conflicting evidence, and views the evidence in the light most favorable to the nonmoving party. *T .W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–631 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

The facts, viewed in the light most favorable to plaintiff, and generally disputed by defendants, are the following: Plaintiff, a 49–year–old Native Alaskan gay woman, met defendant May on November 3, 1995. At the time she was a student at the Academy of Art in San Francisco. Dr. May was Dean of the Center for Science, Technology and Information Resources at California State University, Monterey Bay (CSUMB). Dr. May invited plaintiff to tour the campus and then to a speaking engagement in Monterey. Plaintiff told Dr. May that she had a bus ticket home but Dr. May offered her a ride home, which she accepted. On that drive, Dr. May asked plaintiff if she was gay. He spoke of unhappiness in his marriage and told plaintiff, "I can barely f—k my wife, she's so dry." He also stated that he was "in love" with a male colleague at CSUMB who had "a nice tight ass." He described an encounter with this colleague and asked plaintiff's opinion whether this suggested the colleague had a sexual interest in him.

Plaintiff expressed her discomfort three times, asked Dr. May not to talk about these subjects, and tried to steer the discussion back to educational and professional matters. Dr. May also stated that "I am the Dean of CSUMB and I can make anything happen", promising to obtain for plaintiff computer hardware and software she needed in her academic pursuits, if she came to CSUMB. After arriving in San Francisco, plaintiff and Dr. May stopped for pizza and beer at Dr. May's suggestion. At the restaurant he told her she had a "beautiful face."

Plaintiff subsequently matriculated at CSUMB. After arriving at CSUMB and finding her housing uninhabitable, she sought Dr. May's assistance. He suggested she contact two people, one of whom was the male colleague in whom Dr. May was interested. Plaintiff then rented a room in the colleague's house. Dr. May came to this house about five times. On one of those occasions, in January 1996, Dr. May started drinking, sat at the kitchen table, spoke of his extramarital affairs, and said he was having good sex with a female co-worker at CSUMB, commenting "I haven't had such good sex until I stopped f—king my wife." Plaintiff left the room and went outside.

In February 1996, when plaintiff was introducing Dr. May to Dr. Mark Mudge, Dr. May put his hand on her arm and kissed her on the cheek in front of Dr. Mudge. Plaintiff backed away. Dr. May did not engage in any offensive sexual speech or conduct after February 7, 1996.

Plaintiff did not report these incidents because she was afraid Dr. May would not honor the promises he made to her. When plaintiff later asked Dr. May about his promises, he accused her of gossiping, said she was unreasonable, asserted that he had never made any promises, and told her he would not help her because she would look like a "special Indian student." He would turn and walk the other way when he saw her in the halls.

In June 1996 plaintiff raised the issue of Dr. May's conduct with members of the CSUMB administration and charged sexual harassment. CSUMB began an investigation into the charges. In a report dated August 14, 1996, which plaintiff has submitted as evidence supporting her claim, the CSUMB official responsible for the investigation concluded that "[w]hile sexually explicit discussions may have taken place, this conduct does not violate the University's sexual harassment policy.... None of these events unreasonably interfered with the student's performance or created an intimidating, hostile, offensive or otherwise adverse educational environment." Plaintiff filed this lawsuit alleging violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983.[1] Plaintiff is still enrolled at CSUMB.

■ The parties agree that Title VII principles guide the resolution of Title IX sexual harassment claims. *See Oona, R.–S.–v. McCaffrey,* 122 F.3d 1207 (9th Cir.1997) (denying qualified immunity in Title IX case and citing *Doe v. Claiborne County,* 103 F.3d 495, 514 (6th Cir.1996) for proposition that Title VII principles guide resolution of Title IX sexual harassment claims); *Patricia H. v. Berkeley Unified School Dist.,* 830 F.Supp. 1288, 1290–93 (N.D.Cal.1993). A Title VII or Title IX plaintiff may allege sexual harassment under two theories: *quid pro quo*[2] and hostile environment. Plaintiff affirmed at oral argument that she is only claiming under a hostile environment theory in the present case.

1. Although plaintiff has made allegations of promises made as inducements to matriculate and later broken, she has not filed a contract or tort claim.

2. *Quid pro quo* workplace sexual harassment occurs when an employer implicitly or explicitly conditions a job, a job benefit, or the absence of a job detriment, on an employee's acceptance of sexual conduct. *Heyne v. Caruso,* 69 F.3d 1475, 1478 (9th Cir.1995). The Department of Education's definition of *quid pro quo* sexual harassment is where a school employee explicitly or implicitly conditions a student's participation in an education program or activity or bases an educational decision on the student's submission to unwelcome sexual conduct. U.S. Department of Education, Office for Civil Rights, *Notice; Sexual Harassment Guidance; Harassment of Students by School Employees, Other Students, or Third Parties* ("Guidance"), 62 Fed.Reg. 12034, 12038 (1997).

■ To establish a hostile environment claim, the plaintiff must show: (1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the plaintiff's educational environment and create an abusive educational environment. *See Ellison v. Brady*, 924 F.2d 872, 875–76 (9th Cir.1991) (Title VII). I conclude that Dr. May's conduct was not sufficiently severe or pervasive to be actionable under Title IX.

■ Whether conduct is sufficiently severe or pervasive to violate Title VII or Title IX can be determined only by looking at all the circumstances. *Harris v. Forklift Systems*, 510 U.S. 17, 20, 114 S.Ct. 367, 369–70, 126 L.Ed.2d 295 (1993) (Title VII). In evaluating the conduct and the circumstances, the court considers the following factors: (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with the student's performance. *Id., Davis v. Monroe County Board of Education*, 120 F.3d 1390, 1418 (11th Cir.1997).[3] The conduct must be judged from both a subjective and an objective perspective.

■ I find that Dr. May's conduct was not sufficiently severe to be actionable. Plaintiff does not claim that any of Dr. May's comments were directed at her; rather she claims he used her as "an emotional dumping ground." Plaintiff's most serious allegations, involving the car ride to San Francisco and the pizza dinner, occurred before plaintiff was a student. Despite the alleged severity of Dr. May's conduct, plaintiff applied to CSUMB. When she arrived in Monterey and had problems with her housing, she contacted Dr. May for help and at his suggestion moved into the home of the male colleague about whom Dr. May had spoken in sexually graphic terms, to plaintiff's alleged disgust.

Plaintiff's decisions simply do not square with her allegations of a hostile, intimidating or abusive environment. Indeed, she seems to have been more concerned that Dr. May did not provide the promised equipment. The CSUMB internal investigation report records that plaintiff stated that:

> her primary concerns were the way in which her academic program has been handled and the failure to deliver on promises made to her. In a telephone conversation on August 1, 1996, I explained to her that this investigation centered on her allegations of sexual harassment. She said, "That's not the piece [the sexual harassment allegations] that's important to me. If that's it, forget it." She said she didn't care about the sexual harassment part. She hung up the phone.

Presumably that is why plaintiff complained to CSUMB not in January or February of 1996, in response to Dr. May's offensive conduct, but in June, after months during which there was no offensive contact. Viewed objectively, Dr. May's revelations about his sex life without any advances on plaintiff herself, together with one kiss on the cheek, in public, simply do not rise to the required level of severity.

■ Nor is Dr. May's conduct actionable under the rule recently enumerated by a unanimous Supreme Court.

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] ... because of ... sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.

*Oncale v. Sundowner Offshore Servs., Inc.*, —— U.S. ——, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201, —— (1998). "The critical issue,

---

**3.** The Office of Civil Rights of the U.S. Department of Education recommends evaluating the following factors: (1) the degree to which the conduct affected the student's education, (2) the type, frequency, and duration of the conduct; (3) the identity of and the relationship between the alleged harasser and the subject of the harass-
ment; (4) the age and sex of the harasser and victim; (5) the context in which the conduct occurred, the size of the school, and the location of the incidents. *Guidance*, 62 Fed.Reg. 12034, 12041–42 (1997); *see Patricia H.*, 830 F.Supp. at 1296.

Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.,* quoting *Harris,* 510 U.S. at 25 (Ginsburg, J., concurring). Although "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex," a sexual harassment plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'" *Oncale,* — U.S. at ——, 118 S.Ct. at 1002.

In this case, plaintiff has provided no evidence that Dr. May's conduct, although arguably objectionable and unprofessional, was in any way connected with plaintiff's sex. Plaintiff has introduced no evidence, nor does the record suggest, that Dr. May would not have acted in exactly the same way to a student or prospective student who happened to be male. Dr. May spoke to her of his sexual desires and liaisons with both men and women. Despite the sexual nature of the speech, it did not expose plaintiff to the "disadvantageous terms or conditions ... to which members of the other sex are not exposed" that the Supreme Court requires a plaintiff to prove. *Id.*

Plaintiff also claims against Dr. May individually under 42 U.S.C. § 1983. Such a claim could be premised on either a statutory or a Constitutional violation. Plaintiff stated at oral argument that her § 1983 claim is premised on a violation of Title IX. As discussed above, Dr. May's conduct does not violate Title IX. Accordingly, plaintiff's § 1983 claim must fail.

For the foregoing reasons, it is HEREBY **ORDERED** that summary judgment is **GRANTED** on both the Title IX and § 1983 claims.