Susan BEACHY, Plaintiff–Appellant,

v.

BOISE CASCADE CORPORATION,
Defendant–Appellee.

No. 98–35321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1999

Filed Sept. 8, 1999

Richard C. Busse and Scott N. Hunt, Busse & Hunt, Portland, Oregon, for the plaintiff-appellant.

Calvin L. Keith and Jay P. Nusbaum, Perkins Coie, Portland, Oregon and Jeffrey D. Neumeyer, Boise Cascade Corporation, Boise, Idaho, for the defendant-appellee.

Before: CANBY and T.G. NELSON, Circuit Judges, and FOGEL, District Judge.[1]

FOGEL, District Judge:

Susan Beachy ("Beachy") appeals a judgment in favor of her former employer, Boise Cascade Corporation ("Boise"), with respect to Beachy's claims of discrimination and wrongful discharge. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the judgment.

## BACKGROUND

Beachy began working for Boise as a log accountant in 1980, keeping records of the company's deliveries of different types of logs to various destinations. On Septem-

1. The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

ber 7, 1993, she was involved in an automobile accident, after which she suffered pain in her neck, shoulders and upper back, vision problems, severe headaches and sporadic numbness throughout her face and arm. She saw chiropractors, an orthopedic surgeon and a neurologist for treatment and occasionally missed work because of medical appointments.

Beginning in January 1994, Beachy began receiving reprimands regarding poor attitude and poor performance. These reprimands came from a number of persons: D. Bridges, who acted as Beachy's immediate supervisor from January 1994 through February 1994; Lana Tuss, who replaced Bridges as Beachy's immediate supervisor in March 1994; DeAnna Mandich, the accounting supervisor; and Dick Hill, the regional controller. Beachy received an unfavorable annual performance review on March 10, 1994 and was terminated on July 1, 1994.

Beachy subsequently filed suit against Boise, asserting *inter alia* that her termination was motivated by disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and Oregon Revised Statutes § 659.425. The case was tried before an eight-person jury, which returned a verdict for Boise.[2] Magistrate Judge Jelderks, who presided over the trial, entered judgment in favor of Boise on March 12, 1998.

Beachy contends that she was denied a fair trial as a result of three trial court errors. First, she contends that Judge Jelderks erred in failing to give a complete instruction on perceived disability discrimination. Second, she contends that Judge Jelderks improperly excluded testimony by Boise employees who claimed to have encountered intolerance to medical problems while at Boise. Finally, she contends that Judge Jelderks erred in admitting into evidence a Notice of Dismissal and Dismissal Memo issued by the Oregon Bureau of Labor and Industries ("BOLI")[3] and in failing to give a limiting instruction regarding these documents.

## STANDARD OF REVIEW

We review *de novo* whether a jury instruction misstated the law and review for abuse of discretion the formulation of the instruction. *See Fireman's Fund Insurance v. Alaskan Pride Partnership*, 106 F.3d 1465, 1469 (9th Cir. 1997). We review evidentiary rulings for abuse of discretion. *See Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir.1995).

## DISCUSSION

I. Jury Instruction Regarding Perceived Disability

At trial, Beachy claimed that Boise discriminated against her on the basis of a perceived disability. Under both the ADA and Oregon law, an employer may be liable for discriminating against an employee based upon a perceived disability if: (1) the employee has a physical or mental impairment that does not substantially limit major life activities but the employee is treated by the employer as having a substantially limiting impairment; (2) the employee has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) the employee has no impairment but is treated by the employer as having a substantially limiting impairment. *See* 42 U.S.C. § 12102(2)(c); ORS 659.400(2)(c);[4] 29 C.F.R. 1630.2(*l*).

---

**2.** One of Beachy's claims, asserting pregnancy discrimination in violation of state law, was tried to Judge Jelderks rather than the jury. In addition, Judge Jelderks granted judgment as a matter of law with respect to two other claims, an ADA claim based upon actual disability and a claim arising under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* Judge Jelderks found for Boise on these claims, none of which is at issue in this appeal.

**3.** The BOLI is the state of Oregon's equivalent to the Equal Employment Opportunity Commission ("EEOC").

**4.** The version of ORS 659.400(2)(c) in effect at the time of Beachy's termination and initi-

Judge Jelderks instructed the jury regarding the first two prongs of this test, informing them that:

An individual is perceived as having a disability if the individual has a physical impairment that does not substantially limit work activities by—but is treated by an employer or supervisor as having such a limitation or has a physical impairment that substantially limits major life activities only as a result of the attitude of others toward such an impairment.

However, Judge Jelderks refused to instruct the jury regarding the third prong, addressing perceived disability when the employee suffers no impairment. Beachy argues that Judge Jelderks' instruction as given misstated the law and that he erred by refusing to instruct the jury regarding the third prong.

Judge Jelderks' instruction accurately stated the law with respect to the two prongs it addressed. The question is whether Judge Jelderks' formulation of the instruction, which excluded the third prong of the test, constituted an abuse of discretion.

■ The record makes clear that Judge Jelderks' decision to exclude the third prong from the jury instruction was based upon his conclusion that it would be inappropriate to instruct on perceived disability in the absence of any impairment when "the unrefuted evidence from the plaintiff herself was that she does have some physi-

cal—or at the time did have some physical impairment." The evidence at trial demonstrated that Beachy suffered from multiple impairments, including pain in her neck, back and shoulders, vision problems, severe headaches and numbness through her face and arm. A party is not entitled to a jury instruction which is unsupported by the evidence. *See Fikes v. Cleghorn,* 47 F.3d 1011, 1014 (9th Cir.1995). Accordingly, Beachy was not entitled to an instruction on the third prong of the test, addressing perceived disability when the employee has no impairment.[5]

## II. Testimony Of Other Boise Employees

■ Beachy attempted to call as witnesses other Boise employees who claimed to have encountered intolerance to medical problems while at Boise. Boise moved *in limine* to exclude the testimony of these witnesses on the grounds that the testimony was irrelevant and prejudicial. During the hearing on the motion, Judge Jelderks concluded that the proffered testimony might be admissible if it showed a trend of illegal, discriminatory conduct, but that it would not be admissible if it showed only that Boise was "hard-nosed and didn't tend to humanize their employees much." Judge Jelderks concluded that in the latter case the testimony would not be particularly probative and might unduly prejudice the jury.

One of Beachy's proposed witnesses offered to testify that a supervisor treated

ation of this action differs slightly from the version currently in effect. However, the differences between the two versions are insignificant and do not affect the analysis set forth herein.

5. Beachy argues that an instruction on the third prong of the test should have been given because the jury might not have believed her claims of pain, vision problems, headaches and numbness. However, it appears that all the evidence presented at trial indicated that Beachy suffered at least some of these impairments. There is nothing in the record to indicate that the jury might have concluded that Beachy suffered no impairments whatsoever.

Beachy also argues that an instruction on the third prong was necessary because there was conflicting evidence as to whether a particular episode of numbness was a "ministroke." However, even if the jury did not believe that the episode in question was a mini-stroke, the evidence is undisputed that Beachy suffered numbness to her face and arm during the episode and therefore that Beachy suffered some sort of impairment. It is immaterial whether the jury believed that the impairment resulted from a stroke or some other cause; the instruction given by Judge Jelderks would apply in either case.

her harshly for taking time off due to a family illness. Another witness offered to testify that she was reprimanded for having excessive pregnancy-related medical appointments and for making excessive telephone calls related to her baby's medical situation. A third witness was prepared to testify that she experienced "differential treatment" regarding her need for medical appointments. A fourth witness offered to testify that she was "harassed" for having bronchitis and walking pneumonia and was fired after missing two days of work following a miscarriage.

Boise argued, and Judge Jelderks apparently agreed, that it was unclear whether the complained-of conduct was a violation of law at the time it occurred. Judge Jelderks asked Beachy for an expanded witness statement from one of the witnesses. It does not appear that an expanded witness statement was provided. Judge Jelderks ultimately concluded that Beachy had failed to establish that Boise's treatment of the proposed witnesses violated any law and therefore that the probative value to be gained from the testimony was outweighed by the potential for prejudice.

Beachy does not dispute Judge Jelderks' conclusion that the proffered testimony failed to establish prior illegal conduct by Boise. However, Beachy asserts that she was entitled to introduce evidence of Boise's intolerance to medical problems even if prior examples of intolerance did not rise to a violation of law. In support of this assertion she cites *Heyne v. Caruso*, 69 F.3d 1475 (9th Cir.1995), a case in which the trial court precluded a female employee claiming *quid pro quo* sexual harassment by a supervisor from introducing testimony by other female employees regarding their own sexual harassment by the same supervisor. On appeal, we held that "an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Heyne*, 69 F.3d at 1479.

Beachy argues that this rule is applicable to her case, and that she should be allowed to introduce evidence that Boise was hostile toward persons with medical problems.

Beachy's argument might be persuasive if the evidence in question indicated that Boise was hostile toward a well-defined and protected group such as persons of a particular race, persons of a particular gender, or persons who are disabled. If that were the case, prior incidents of intolerance might be probative of general hostility even if such incidents did not rise to the level of a statutory violation. However, the proffered testimony in this case indicates that, at most, Boise did not like its employees to miss work for medical appointments or family illness. Even assuming that the proffered testimony demonstrated that Boise had a discriminatory animus toward "employees with medical problems," as opposed to a dislike for employees missing work, there do not appear to be any reported cases extending the rule articulated in *Heyne* to such an amorphous group. All the reported cases in which evidence of other incidents was allowed involved evidence related to a group defined by clearly established parameters such as gender, *see, e.g., Hurley v. Atlantic City Police Department*, 174 F.3d 95, 110–11 (3d Cir.1999), or race, *see, e.g., Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1104 (8th Cir.1988). It cannot be said that Judge Jelderks abused his discretion in declining to extend these holdings to allow testimony regarding hostility toward a group which is not clearly defined and not clearly protected under the law, particularly when he had concluded that admission of the testimony would be prejudicial.

### III. Admission Of The BOLI Documents

■ Beachy sought to exclude from evidence the BOLI's Notice of Dismissal informing her that the BOLI would not proceed with her case because it "did not find sufficient evidence to continue [its] investigation." Beachy also sought to exclude the BOLI's Dismissal Memo detailing the BOLI's investigation of her claim. Beachy

argued that admission of these documents would confuse the issues and would create a danger that the jury would substitute the agency's judgment for its own judgment. Beachy argued that under these circumstances the documents should be excluded pursuant to Federal Rule of Evidence 403, because the probative value of the documents was outweighed by the potentially prejudicial effect. Judge Jelderks admitted the documents over Beachy's objection.

Beachy argues that admission of the documents was erroneous on two grounds. First, she argues that admission of the documents was prejudicial because the documents could have confused the jury and led it substitute the BOLI's judgment for its own. In addition, she argues that admission of the Dismissal Memo was erroneous because it contained summaries of witness statements which constituted hearsay.[6]

With respect to Beachy's first argument, we conclude that it is unclear from the record whether Judge Jelderks considered the prejudicial effect the BOLI documents might have on the jury. Boise argued that the BOLI documents were admissible under *Plummer v. Western International Hotels Co., Inc.*, 656 F.2d 502 (9th Cir. 1981) and *Heyne*, 69 F.3d 1475, in which we held that it is reversible error for a district court to exclude an agency's determination of probable cause. Judge Jelderks subsequently found the BOLI documents to be admissible, characterizing the documents as a "probable cause finding." Accordingly, it appears that Judge Jelderks may have felt compelled to admit the documents pursuant to *Plummer* and *Heyne* and may not have weighed independently the documents' probative value and potential for prejudice.

We now hold that an agency's determination that insufficient facts exist to continue an investigation is not *per se* admissible in the same manner as an agency's determination of probable cause. Whereas the latter type of determination indicates only that there is probable cause to believe a violation has occurred, the former type of determination in effect constitutes a finding of no probable cause and terminates the agency's inquiry. In this sense, a determination of insufficient facts is a final ruling by the agency. There is a much greater risk of unfair prejudice involved in introducing a final agency ruling as opposed to a probable cause determination, because a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results. *See Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir.1986). Accordingly, we have held that a district court asked to admit an agency's letter of violation must weigh the letter's prejudicial effect against its probative value pursuant to Rule 403. *See id.* We conclude that the same rule should apply when a district court is asked to admit an agency's determination that insufficient facts exist to continue an investigation.[7]

The fact that Judge Jelderks may have admitted the BOLI documents without performing the weighing process mandated by Rule 403 does not necessarily require reversal. "An evidentiary error does not require reversal of a jury verdict unless a party's substantial rights were affected." *Gilchrist*, 803 F.2d at 1500. In a civil case, the question of whether a party's substantial right to a jury trial has been affected turns on whether "the jury's verdict is more probably than not untaint-

---

6. Beachy's statement of issues on appeal asserts an additional error based upon Judge Jelderks' failure to give a limiting instruction regarding the BOLI documents. However, neither her opening brief nor her reply brief address substantive argument to this asserted error. Moreover, for the reasons discussed below, we conclude that the admission of the BOLI documents did not affect Beachy's sub-

stantial rights, even in the absence of a limiting instruction.

7. We note that the only other Circuit to address this precise issue has reached the same conclusion. *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 and n. 3 (2d Cir. 1998).

ed by the error." *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir.1983). If the jury more probably than not would have reached the same result absent the error, the error is harmless and the party's substantial rights have not been affected. *See id.*

After reviewing the record, we conclude that the jury more probably than not would have found for Boise even if the BOLI documents had been excluded. Beachy's discrimination case was not particularly strong, and Boise presented substantial evidence that it had legitimate, non-discriminatory reasons for terminating her. Moreover, Judge Jelderks instructed the members of the jury that "[y]ou must each decide the case for yourself" based upon *all* of the evidence presented during the trial. We therefore conclude that any error in the admission of the BOLI documents was harmless and did not affect Beachy's substantial rights.

■ With respect to Beachy's assignment of error based upon hearsay, she failed to raise a hearsay objection to the BOLI documents at trial. Thus we apply the plain error standard, under which we consider whether the asserted error was highly prejudicial and affected Beachy's substantial rights. *See Sablan v. Department of Fin. of C.N.M.I.*, 856 F.2d 1317, 1323 (9th Cir.1988); *see also Scott v. Ross*, 140 F.3d 1275, 1285 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1285, 143 L.Ed.2d 378 (1999). As is set forth above, we have concluded that any error in the admission of the BOLI documents was harmless and did not affect Beachy's substantial rights.

Accordingly, the judgment of the district court is

**AFFIRMED.**