**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARTHUR CLEMENS, JR., | No. 15-35160 |
| Plaintiff-Appellee, | D.C. No. 2:13-cv-01793-JPD |
| v. | |
| CENTURYLINK INC., | MEMORANDUM[*] |
| Defendant, | |
| and | |
| QWEST CORPORATION, | |
| Defendant-Appellant. | |

| | |
|---|---|
| ARTHUR CLEMENS, JR., | No. 15-35183 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-01793-JPD |
| v. | |
| CENTURYLINK INC., | |
| Defendant, | |
| and | |
| QWEST CORPORATION, | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Western District of Washington
James P. Donohue II, Magistrate Judge, Presiding

Argued and Submitted October 2, 2017
Seattle, Washington

Before: WARDLAW, CLIFTON, and OWENS, Circuit Judges.

Defendant Qwest Corporation appeals from a judgment following a jury verdict imposing liability for Title VII unlawful employment retaliation against plaintiff Arthur Clemens. As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1. Any error by the district court in excluding the typed April 29 and July 18, 2008 interview notes was harmless. Virtually every pertinent detail within the excluded notes was established, or could have been, through the testimony of those who participated in the interviews and prepared the notes. Qwest employee John Rust, who conducted the April 29 interview and prepared the accompanying notes, testified about his recollections. Shannon Ridge, who assisted Rust, testified on other subjects and was available to be examined about the April 29 interview. Brad Butler and Rebecca Flores, who prepared the notes corresponding to the July

---

[1] We dispose of Clemens's cross-appeal in an opinion filed concurrently with this memorandum.

18 interview, testified extensively as to what they saw and heard during that interview, as did Clemens and his union representative Stan Wiley. All six of these witnesses were subject to cross-examination. And both Qwest and Clemens used the typed interview notes extensively to refresh the witnesses' recollections of the interviews where necessary. Qwest, in other words, achieved through these witnesses virtually all of what it claims to have lost by the notes' exclusion. Any error in excluding the notes was therefore harmless.

2. Exercising its discretion under *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974), the district court reasonably concluded that Clemens's claims of race discrimination and retaliation were not at issue at the arbitration and that the arbitral decision was therefore inadmissible. Explicit references to racial bias, Clemens's race, and employment retaliation are absent from the excerpts of the decision to which Qwest points, as well as from the "Discussion and Opinion" section of the arbitrator's written decision. Clemens's union representative, moreover, certified that he "made the strategic decision not to pursue claims of race discrimination or retaliation" and "did not present evidence related to those potential claims" during the arbitration. Given the decision's at best oblique references to race discrimination and retaliation and the union representative's affidavit, it was well within the district court's discretion to conclude that the "record before the arbitrator was not adequate with respect to the issues of race

3

discrimination and retaliation" and that the arbitrator's decision was therefore inadmissible. *See Costa v. Desert Palace, Inc.*, 299 F.3d 838, 863 (9th Cir. 2002) (en banc).

Moreover, it was within the district court's discretion to hold the arbitration decision inadmissible under Federal Rule of Evidence 403. The decision is replete with explicit findings that Clemens and his version of events were not to be believed, as well as acerbic language describing Clemens and his conduct. Qwest itself agrees that the decision "focused mostly on the incredibility of Clemens's claims." Given these features, it was not an abuse of discretion to conclude that the report was unduly inflammatory and would confuse, mislead, or usurp the jury's role in assessing Clemens's credibility.

The Washington State Human Rights Commission ("WSHRC") report, on the other hand, squarely addressed Clemens's race-discrimination and retaliation claims and was admissible in its own right. *See Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995); *Plummer v. W. Int'l Hotels Co.*, 656 F.2d 502, 504–05 (9th Cir. 1981). It also avoided the arbitration decision's credibility findings and inflammatory rhetoric. In light of these differences, it was not an abuse of discretion for the district court to exclude the arbitral decision's text while admitting the WSHRC report.

3. The district court did not commit prejudicial error by responding to a jury

4

question on causation by referring the jury to a correct instruction from the court's initial charge. "The necessity, extent and character of additional [jury] instructions are matters within the sound discretion of the trial court." *United States v. Collom*, 614 F.2d 624, 631 (9th Cir. 1979) (quoting *Wilson v. United States*, 422 F.2d 1303, 1304 (9th Cir. 1970)). In the Ninth Circuit, "[t]he ultimate question is whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors." *Powell v. United States*, 347 F.2d 156, 158 (9th Cir. 1965) (internal quotation marks omitted).

We are not persuaded by Qwest's argument that the district court's referral of the jury to the court's original, legally accurate instruction "left the jury to decide liability based on two equally erroneous standards of causation: motivating factor or only factor." It was far from an abuse of discretion to draw the jury back to the initial instruction's undoubtedly correct language and refuse to employ a formulation not provided for in this circuit's model civil jury instructions. While the district court's answer stopped short of affirmatively instructing the jury not to apply the erroneous causation standards the jury had referenced in its question, the language of the court's original charge was sufficient to clarify that neither standard was the correct one and that the but-for test alone was to govern the jury's consideration of Clemens's retaliation claim. None of the authorities Qwest offers compels a contrary conclusion.

5

In any event, any error was harmless. When discussing the proper response to the jury's question with the district court, Qwest requested that the court instruct the jury that but-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." But this proposed language was substantially similar to that of the district court's original instruction and lacked any admonition that the jury was not to apply the two incorrect causation standards it had articulated in its question—the very same defect to which Qwest now takes exception. Given the similarities between Qwest's proposed answer and the one the district court provided, it is unlikely that the jury would have been dispelled of the grave confusion Qwest ascribes to it had the district court used Qwest's language instead. It is more probable than not, in other words, that the court's refusal to respond to the jury as Qwest requested, if erroneous, was harmless. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).

**AFFIRMED.**