Laura ZUBULAKE, Plaintiff,

v.

UBS WARBURG LLC, UBS Warburg, and UBS AG, Defendants.

No. 02 Civ. 1243SAS.

United States District Court, S.D. New York.

March 16, 2005.

James A. Batson, Liddle & Robinson, LLP, New York City, for Plaintiff.

Bettina B. Plevan, Proskauer Rose LLP, New York City, for Defendants.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Laura Zubulake is suing her former employer, UBS Warburg LLC (hereinafter "UBS"), for sex discrimination, including disparate treatment and wrongful termination, and retaliation in violation of, *inter alia,* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Both parties have filed motions in limine that are addressed in this Opinion and Order.

## I. PLAINTIFF'S MOTION TO PRECLUDE EVIDENCE OF HER PRIOR EMPLOYMENT

■ Plaintiff seeks to preclude defendants from using evidence of plaintiff's prior employment to show that she had a propensity for certain performance deficiencies. Defendants intend to proffer two categories of evidence. *First,* UBS seeks to introduce evidence of plaintiff's employment history, specifically the fact that she worked for ten different securities firms in a period of less than twenty years. Be-

cause this evidence is relevant to plaintiff's ability to find subsequent employment it is admissible.

The second category of evidence involves plaintiff's poor work performance at Credit Suisse First Boston ("CSFB") and, in particular, the performance appraisal she received shortly before negotiating a severance package. *See* May 5th 1999 Memorandum from Jay Plourde entitled "Performance Deficiencies." Plaintiff claims that this is character evidence which is inadmissible under Federal Rule of Evidence 404(b). Defendants claim that this evidence is admissible because: (1) plaintiff's character is in issue;[1] (2) the evidence is proffered to prove matters other than plaintiff's character, specifically to rebut her contention that she was not insubordinate and uncooperative; and (3) the evidence is admissible to prove habit pursuant to Rule 406. Defendants' arguments are rejected.

An almost identical issue involving previous employment was addressed in *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507 (D.C.Cir.1995). In that case, plaintiff sued her employer Adduci, Mastriani, Meeks & Schill ("AMM & S"), a Washington D.C. law firm, for sex discrimination in violation of Title VII. In addition to introducing evidence of plaintiff's performance problems at AMM & S, defendants introduced evidence concerning plaintiff's prior employment with another law firm, Dow, Lohnes & Albertson ("DL & A"). *See id.* at 85 (defendants introduced written evaluations of plaintiff's work at DL & A and related testimony regarding plaintiff's difficulties in getting along with staff and meeting deadlines while an associate at DL & A).

Defendants argued that the DL & A evidence was admissible to demonstrate that plaintiff had the same difficulties at a previous law firm that she had at AMM & S or, failing that, to impeach her testimony regarding her reasons for leaving DL & A. The court rejected the argument that the DL & A evidence was admissible because it demonstrated that plaintiff displayed similar work-related problems in her former employment. In finding that the district court abused its discretion in admitting this evidence, the court stated:

> Both AMM & S and the district court misapprehend the Federal Rules' treatment of character evidence. Under Federal Rule of Evidence 404, "[e]vidence of a person's character or a trait of [her] character is not admissible for the purpose of proving that [she] acted in conformity therewith on a particular occasion," except in certain defined circumstances none of which is present here. Fed.R.Evid. 404(a). Additionally, Rule 404(a) provides specifically that evidence of prior acts cannot be introduced to prove the character of a person in order to show that she acted in conformity therewith. Fed.R.Evid. 404(b). When the district court admitted the DL & A evidence relating to Neuren's difficulties with personal relationships at that firm, it noted that the evidence was "relevant with respect to how she performed at another firm.... [AMM & S is] just showing that this is the same problem that this woman had." (citation

---

1. Character may itself be an element of a crime, claim or defense. *See* Advisory Committee Note to Subdivision (a). One example is the chastity of a victim under a statute requiring chastity as an element of the crime of seduction. *See id.* These kinds of situations are commonly referred to as "character in issue" cases. *See id.* In these cases, Rule 404 does not apply and the relevant character evidence is admissible. This case is not covered by the exception. A plaintiff's character is not an essential element of any claim or defense in an employment discrimination case. The prohibitions of Rule 404 therefore apply.

omitted). Thus, the district court admitted the evidence for the purpose specifically prohibited by Rule 404—as evidence that she acted in conformity with her behavior at DL & A while working for AMM & S.

The DL & A character evidence does not fall within any of the exceptions expressly contemplated by Rule 404(b). *See* Fed.R.Evid. 404(b) (exceptions for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). Moreover, appellee's argument that this evidence is admissible because character was "in issue" in the case is equally unavailing. Under the "character in issue" doctrine, character evidence is admissible where character itself is "an element of a crime, claim, or defense." Fed.R.Evid. 404(a), Notes of Advisory Committee on Proposed Rules. An example of evidence admissible where character is "in issue" is evidence of the chastity of a victim in a prosecution for the crime of seduction where chastity is an element of that crime. *Id.* In this case, AMM & S has not offered a plausible theory under which Neuren's character could be considered an element of its defense. AMM & S's business justification for Neuren's termination was that she had difficulty in interpersonal relationships with co-workers and in meeting deadlines. Strictly speaking, this defense is based on Neuren's *behavior* at the firm, not her *character.* Consequently, her character was not "in issue" in the sense contemplated by the exception to the rule.

*Id.* at 511. Several lower courts in the District of Columbia have reached similar conclusions. In *Zenian v. District of Columbia,* 283 F.Supp.2d 36 (D.D.C.2003), the District wanted to introduce documentary evidence pertaining to plaintiff's performance problems prior to July 1995.

The district court precluded such use, stating:

> If the District is offering the evidence to show that plaintiff has always been a bad employee, it is doing exactly what it cannot do: introduce evidence of a person's character to prove that his behavior on one or more occasions was consistent with that character. Fed.R.Evid. 404(a). The only purpose of proving that plaintiff was a bad employee before 1995 is to prove that he was an equally bad employee after 1995. That, of course, is exactly what a litigant cannot do.

*Id.* at 40. *See also Rauh v. Coyne,* 744 F.Supp. 1181 (D.D.C.1990) (holding inadmissible evidence concerning plaintiff's job performance before and after her employment at defendants' establishment).

■■■ The reasoning found in these cases is persuasive. Because this is an employment discrimination case, plaintiff's character is not in issue, either as an essential element of a claim or defense. *See EEOC v. HBE Corp.* 135 F.3d 543, 553 (8th Cir.1998) (plaintiff's moral character was not an essential element of his retaliatory discharge claim). And no matter how defendants try to frame their intended use—whether to rebut plaintiff's contention that she was not insubordinate and uncooperative or whether to prove that she was insubordinate and uncooperative outright—they are seeking to introduce inadmissible propensity evidence. Because none of the exceptions found in Rule 404(b) apply here, such evidence is inadmissible to prove that plaintiff acted insubordinately at UBS.

Finally, defendants argue that the evidence at issue is admissible under Rule 406 as evidence of plaintiff's habit of behaving insubordinately in response to conflicts in the workplace. Rule 406 provides as follows: "Evidence of the habit of a

person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." The Advisory Committee Note to Rule 406 of the Federal Rules of Evidence defines "habit" as follows: "'A habit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.'" Fed.R.Evid. 406, Advisory Committee Note (quoting *McCormick on Evidence*, § 195 at 462–63 (2d. ed.1972)).

◼ Habit is conduct that is situation-specific, *i.e.*, specific, particularized conduct capable of almost identical repetition. Character, on the other hand, is a generalized description of a person's disposition or a general trait such as honesty, violence or peacefulness. There is a tension between Rule 404 (character) and Rule 406 (habit) which stems from the difficulty in distinguishing between admissible evidence of habit and inadmissible character evidence. *See Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) ("We are cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes.").

◼ "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a

given manner, but rather, conduct that is 'semi-automatic' in nature." *Id.* "Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, 'adequacy of sampling and uniformity of response' are controlling considerations." *Reyes v. Missouri Pac. R.R. Co.*, 589 F.2d 791, 795 (5th Cir.1979) (quoting Notes of Advisory Committee). "It is only when examples offered to establish such pattern of conduct or habit are numerous enough to base an inference of systematic conduct, that examples are admissible." *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir.1985) (internal quotation marks and citation omitted).

These principles have been applied to exclude evidence of conduct that falls short of the definition of habit. One such case is *Becker v. ARCO Chem. Co.*, 207 F.3d 176 (3d Cir.2000), an age discrimination case. In that case, defendant offered a legitimate non-discriminatory reason for its termination of Becker. To rebut that defense, Becker offered evidence that ARCO had previously fabricated evidence of a legitimate reason for terminating one of Becker's co-employees, Linwood Seaver. *See id.* at 183, 185. Specifically, Becker testified that two of his supervisors solicited his assistance in fabricating evidence of Seaver's poor performance on a particular project to facilitate Seaver's termination. *See id.* at 185.

"[T]he district court found Becker's testimony admissible under Rule 404(b) because it was evidence of a scheme or plan of fabricating reasons used by the decisionmaker in terminating employees." *Id.* at 189 (internal quotation marks and citation omitted). The appellate court rejected this reasoning. *See id.* at 201 ("[W]e hold that standing alone, the similarities between the Seaver evidence and the allegation of fact in this case do not provide

a sufficient foundation from which the existence of ARCO's 'scheme or plan' of fabricating reasons in terminating its employees may be inferred so as to justify admitting the Seaver evidence on that basis.").

The district court also found the Seaver evidence admissible "under the theory that it tended to show ARCO's 'habit' when confronted with the task of having to terminate its employees." *Id.* at 204. The appellate court disagreed:

> Clearly, Rule 406 does not support the introduction of the Seaver evidence on the basis that it was ARCO's "habit" to fabricate reasons for terminating its employees. The Seaver evidence did not show ARCO's "regular response to a specific situation," as the nature of the alleged conduct—the fabrication of reasons to justify its employees' dismissals—is not the sort of semi-automatic, situation-specific conduct admitted under the rule. Moreover, the Seaver evidence ostensibly showed only, at best, one other instance in which ARCO exhibited its alleged repetitive behavior.

*Id.*

Similarly, in *McCarrick v. New York City Off–Track Betting Corp.*, No. 91 Civ. 5626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995), the plaintiff argued that witnesses should have been allowed to testify as to OTB's policy of discriminating against its employees on the ground that OTB's conduct constituted habit evidence admissible under Rule 406. The court rejected this argument stating that "[i]n order to be admissible under this rule ... the conduct at issue must constitute a 'regular response to a repeated specific situation.'" *Id.* (quoting *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir.1994)). The court found that "evidence of an employer's overall policy of discrimination against several individuals under varying circumstances is not the sort of repeated conduct covered by Rule 406." *Id.*

■ Here, plaintiff's alleged insubordination and lack of teamwork at CSFB was in response to the specific circumstances plaintiff confronted at that job. In other words, plaintiff's conduct at CSFB resulted from many factors, including her interaction with supervisors and other employees, within the CSFB working environment. Plaintiff's experience at UBS was necessarily different because UBS had a working environment distinct from that at CSFB. Plaintiff's alleged insubordination and lack of teamwork at UBS therefore cannot be seen as habit because it is not "a regular response to a repeated specific situation." In any event, insubordination at two securities firms is not of sufficient frequency to show the type of semi-automatic conduct envisioned in Rule 406. The CSFB Performance Deficiency Memorandum is therefore not admissible as habit evidence under Rule 406.

■ In addition to the prohibition found in Rule 404(b) and the inapplicability of Rule 406, there is another reason to preclude the admission of the CSFB Memorandum. To admit the Memorandum would, in effect, create a trial within a trial. Absent a stipulation, documents must be authenticated before they are admitted. That means that someone from CSFB would have to testify as to the Memorandum's authenticity. Then, both sides would likely call witnesses to testify regarding plaintiff's performance at CSFB. Weighing the slight probative value of this evidence against the confusion it would cause the jury and the inevitable delay in the core trial proceedings, I also find the proffered evidence inadmissible under Rule 403.

## II. DEFENDANTS' MOTIONS

### A. To Preclude Alleged Acts of Discrimination Against Another UBS Employee

■ Defendants seek to preclude plaintiff from introducing evidence of alleged acts of discrimination directed at sales assistant Peggy Yeh by Matthew Chapin, the Manager of the U.S. Asia Equities Sales Desk. These acts include: (1) use of the expressions "chicks" and "yellow fever" when referring to Asian women; (2) asking whether Yeh planned to wear a one-piece or two-piece bathing suit on vacation; (3) asking whether Yeh had any "weekend exploits;" (4) stating his belief that extramarital affairs between consenting adults were acceptable; and (5) his suggestion that Yeh use her feminine charms to improve client relationships. Defendants also seek to preclude an alleged statement made by co-worker Robert Hrabchak, who responded to Yeh's comments belittling him at an employee dinner by saying "fuck me, Peggy." [2] Finally, defendants also seek to preclude any evidence concerning Yeh's exit interview at UBS, in which Yeh allegedly described discriminatory comments and conduct by Chapin and Hrabchak.[3]

■ "As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir.1990) (collecting cases). The Ninth Circuit cited *Spulak* in stating that "[i]t is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir.1995). In addition, the Third Circuit has recognized that, as a general rule, "evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination." *Becker*, 207 F.3d at 194 n. 8.

■ The type of discrimination directed at other employees must be similar in nature to that experienced by the plaintiff in order to make the "other employee" conduct admissible. In *Heyne*, for example, the plaintiff claimed she was fired for rejecting the sexual advances of her employer, Mario Caruso. *See Heyne*, 69 F.3d at 1477. The court admitted evidence of the employer's sexual harassment of other female employees, stating as follows:

> Evidence of Caruso's sexual harassment of other female workers may be used, however, to prove his motive or intent in discharging Heyne. The sexual harassment of others, if shown to have occurred, is relevant and probative of Caruso's general attitude of disrespect toward his female employees, and his sexual objectification of them. That attitude is relevant to the question of Caruso's motive for discharging Heyne.

*Id.* at 1480 (citation omitted). The court found that the probative value of this evidence outweighed the danger of unfair prejudice.

---

2. Plaintiff does not intend to offer any evidence of this statement. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions in Limine ("Pl.Opp.") at 3, n. 2.

3. Lauren Cullinane is the Human Resources employee who conducted Yeh's exit interview.

Cullinane's testimony as to what Yeh told her during that interview and her contemporaneous notes of what Yeh told her are not hearsay if offered for the limited purpose of rebutting a charge of recent fabrication. *See* Fed. R.Evid. 801(d)(1)(B).

There is no unfair prejudice, however, if the jury were to believe that an employer's sexual harassment of other female employees made it more likely that an employer viewed his female workers as sexual objects, and that, in turn, convinced the jury that an employer was more likely to fire an employee in retaliation for her refusal of his sexual advances. There is a direct link between the issue before the jury—the employer's motive behind firing the plaintiff—and the factor on which the jury's decision is based—the employer's harassment of other female employees.

*Id.* at 1481.

■ Two types of discrimination are at play: (1) the sexual harassment experienced by Yeh because of Chapin's attraction to her; and (2) the alleged unfavorable treatment of plaintiff by Chapin because she is a woman. Facially, the two types of discrimination appear to differ, one being the kind of harassment seen in hostile work environment cases and the other being disparate treatment. But there is a common thread—both result from Chapin's non-performance based reaction to individuals based on their gender and they both degrade individuals because of their sex, albeit in different ways.

In *Becker*, the Third Circuit noted that the courts that admitted other employee evidence did so because the discriminatory nature of the conduct tended to show the employer's state of mind or attitude toward members of the protected class. *See id.*, 207 F.3d at 194 n. 8. Similarly, the Eighth Circuit reversed a jury verdict for defendant in an age and race discrimination suit where the district court excluded, on relevance grounds, "evidence which tended to show a climate of race and age bias at [defendant's company]." *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir.1988), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[4] In *Estes*, the court noted that an employer's prior or ongoing discriminatory conduct is indeed relevant to proving a particular instance of discrimination. *See id.* at 1102. *See also Phillip v. ANR Freight Sys., Inc.*, 945 F.2d 1054 (8th Cir. 1991) (stating that " 'background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive' ") (quoting *Estes*, 856 F.2d at 1103).

Accordingly, plaintiff may introduce evidence of Chapin's allegedly discriminatory treatment of Yeh, including use of the phrase "yellow fever."[5] In addition, de-

**4.** In *Estes,* the district court excluded background evidence concerning defendant's workforce on materiality grounds because Estes presented an individual disparate treatment case, not a disparate impact case. *See id.* at 1103. The court stated that "it is hard to see how evidence which suggests that Ford discriminated against blacks in hiring would be irrelevant to the question of whether it fired a black employee because of his race." *Id.*

**5.** Defendants' reliance on *Haskell v. Kaman Corp.,* 743 F.2d 113 (2d Cir.1984), is misplaced. In *Haskell,* the Second Circuit held that testimony of six former employees had been admitted in error because that testimony

did not produce statistically significant evidence of a pattern and practice of discrimination. Thus, the court found that the probative value of the evidence was outweighed by the prejudicial impact of "a parade of witnesses, each recounting his contention that defendant laid him off because of his age." *Id.* at 122. *Haskell* is a decision addressing the value of statistical evidence in which the sample was held to be too small. Because the plaintiff in *Haskell* proffered the evidence to show a "pattern and practice" of discrimination, the court did not discuss whether the evidence was probative of a discriminatory attitude on the part of the employee's supervisor. *Haskell,* therefore, is not a controlling case here.

fendants will likely offer evidence that four of the seven people Chapin hired were women, albeit all of them were Asian. Chapin's comments to Yeh, particularly his use of the phrase "yellow fever," indicate his attraction to Asian women. The fact that he hired and promoted four women, all from the group he finds sexually attractive, does not negate the possibility of discrimination against non-Asian women. Thus, plaintiff would be allowed to offer the Yeh evidence, in any event, to rebut this defense.

### B. To Preclude Irrelevant Testimony

#### 1. Court Decisions and Discovery

■ Defendants contend that this Court's previous decisions in this case, including the imposition of sanctions on UBS, are irrelevant to plaintiff's discrimination claims and would unfairly prejudice UBS. Defendants are right. Placing the five previous decisions in this case before the jury would serve no legitimate purpose. The jurors will be told all they need to know through the evidence admitted at trial and my charge. There is no need to reference my earlier decisions.

■ Defendants also argue that none of the correspondence between counsel on discovery matters is relevant to plaintiff's claims or the adverse inference instruction and seek to preclude plaintiff from introducing this evidence. In *Zubulake v. UBS Warburg LLC*, No. 02 Civ. 1243, 2004 WL 1620866, at *5 (S.D.N.Y. July 20, 2004) ("*Zubulake V*"), I found that "UBS personnel unquestionably deleted relevant e-mails from their computers after August 2001, even though they had received at least two directions from counsel not to." I also found that "UBS acted wilfully in destroying potentially relevant information, which resulted either in the absence of such information or its tardy production...." *Id.* at *12. I therefore concluded that the appropriate remedy was an adverse inference instruction with respect to e-mails deleted after August 2001. *See id.* at *13. The text of the adverse inference instruction I intend to give the jury in this case is set forth at the end of *Zubulake V*. It states, in pertinent part, as follows: "You may also consider whether you are satisfied that UBS's failure to produce this information was reasonable."

In light of the above, plaintiff may introduce correspondence between counsel on discovery matters if defendants open the door by introducing evidence as to whether their failure to produce was reasonable. If defendants decide not to offer proof that their failure to produce certain e-mails (or late production of other e-mails) was justified, plaintiff will not be permitted to introduce any of the correspondence between counsel in her case in chief.

#### 2. Back–Up Tapes

■ Defendants seek to preclude any evidence concerning the failure by UBS to preserve several monthly back-up tapes. In *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, (S.D.N.Y.2003) ("*Zubulake IV*"), I stated the following:

> Whether a company's duty to preserve extends to backup tapes has been a grey area. As a result, it is not terribly surprising that a company would think that it did *not* have a duty to preserve all of its backup tapes, even when it reasonably anticipated the onset of litigation. Thus, UBS's failure to preserve all potentially relevant backup tapes was merely negligent, as opposed to grossly negligent or reckless.

*Id.* at 220. The destruction of some of the backup tapes may be relevant to UBS's justification for failing to produce some of the e-mails sent or received in August and September 2001. However, for the reasons stated with regard to attorney correspondence, the choice as to whether to

introduce such evidence is left to defendants. Plaintiff can introduce evidence of backup tape destruction if, and only if, defendants first open the door to such evidence.

### 3. Securities Exchange Commission Compliance

██ According to defendants, any testimony about UBS's compliance with Securities Exchange Commission ("SEC") Rule 17a–4 is irrelevant and should be excluded. Defendants correctly point out that this case does not arise out of any alleged failure by UBS to comply with SEC Rule 17a–4. Admitting testimony of UBS's non-compliance with the Rule would only serve to unfairly prejudice the jury against UBS. I previously noted that "[i]n the absence of a clear professional duty, the only obvious reason for Zubulake to disclose this material to regulators is to gain leverage against UBS in this action." *Zubulake v. UBS Warburg LLC,* No. 02 Civ. 1243, 2003 WL 21087136, at *2 (S.D.N.Y. May 13, 2003) *("Zubulake II")*. This same observation applies to plaintiff presenting evidence of alleged violations of SEC Rule 17a–4 to the jury, which could cause undue prejudice. This evidence is excluded even if defendants seek to prove the reasonableness of their non-production of certain e-mails.

### 4. Chapin's Arrest

██ Defendants also seek to prevent plaintiff from introducing testimony and documents concerning Chapin's arrest for disorderly conduct which occurred during a client outing with Leland Timblick. In her initial opposition papers, plaintiff states that she does not intend to present evidence of Chapin's arrest at trial. *See* Pl. Opp. at 3, n. 3. However, in her supplemental opposition papers, plaintiff reserves the right to testify as to Chapin's arrest should defendants raise the issue of plaintiff's perceived lack of respect for Chapin as her manager. *See* Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motions in Limine. Plaintiff's request is denied. The resulting prejudice from proof of this arrest would outweigh its probative value. Furthermore, the conduct resulting in the arrest does not relate in any way to the truthfulness of the witness. *See* Fed.R.Evid. 608(b).

### 5. Chapin's Alleged Prior Conduct

Defendants seek to preclude testimony of Chapin's alleged discriminatory conduct at other firms. Such evidence includes rumors that Chapin sexually harassed a former colleague at HSBC, allegations that he discriminated against women at his prior place or places of employment, and a former colleague's reference to him as a "misogynist." Defendants argue that such hearsay testimony is barred by Rule 602 as plaintiff has no personal knowledge of Chapin's prior conduct. In response, plaintiff has stated that although she herself will not give such testimony, she may call individuals who do have actual knowledge, including Raymond Tam and Michael Bugel, both of whom were formerly employed by HSBC. *See* Pl. Opp. at 5–6.

In a telephone conference held on March 15, 2005, plaintiff conceded that she does not intend to call either witness in her direct case. Whether she is entitled to call either witness on rebuttal is an open question, but it is highly unlikely that this Court would permit such testimony for the same reasons discussed in Part I, *supra,* with regard to character evidence.

### 6. Demographics of Senior Management

██ Defendants anticipate that plaintiff will proffer her own testimony concerning the number of women in senior positions at UBS. Plaintiff has stated that she

does not intend to provide such testimony unless UBS opens the door. *See id.* at 6. Plaintiff is permitted to testify to her own observations.

### 7. September 2001 Conference

■ Defendants seek to preclude evidence of Chapin's decision not to cancel a conference in New York attended by visitors from China during the wake of the September 11, 2001 tragedy. Plaintiff claims that such evidence is relevant to discrediting an e-mail in which Chapin describes as false Zubulake's statement to another salesperson that Peggy Yeh was forced to attend the conference. This is surely a collateral issue. The e-mail, in fact, is favorable to defendants as it highlights plaintiff's alleged insubordination in saying negative things about Chapin to others. Whether or not Yeh, in fact, felt pressured to attend the conference is irrelevant. Furthermore, the probative value of this evidence, if any, is completely outweighed by the danger of unfair prejudice given the emotions associated with the attacks of September 11th. This evidence is therefore excluded.

### 8. Client Functions

■ Defendants argue that evidence that plaintiff's co-workers organized client trips to strip clubs is irrelevant to plaintiff's claims. Although plaintiff has not alleged a hostile work environment, she has alleged discriminatory treatment, including the purposeful exclusion from client outings. Having client outings at strip clubs, knowing that women would obviously not want to attend, is one such method of exclusion. Therefore, evidence of these outings is relevant and will be admitted.

### C. To Preclude Certain Stray Remarks

■ Defendants anticipate that plaintiff will seek to admit evidence that: (1) Derek Hillen, a UBS employee, referred to a male contact as a "dickhead" in an e-mail to Chapin and plaintiff;[6] and (2) an e-mail from Andrew Clarke, a co-worker on the Desk, in which he stated that plaintiff and a co-worker, Lisa Marrapodi, were engaging in a "mutual bitch session."[7] Clarke, however, was not a decision-maker, nor was he accused by plaintiff of discriminating against her. Accordingly, Clarke's stray remark is not evidence of discrimination and is therefore excluded. *See Minton v. Lenox Hill Hosp.*, 160 F.Supp.2d 687, 695 (S.D.N.Y.2001) (stating that it is well established that "[a]s a general matter, stray comments are not evidence of discrimination if … they are made by individuals without decision-making authority") (internal quotation marks and citation omitted, ellipsis in original).

### D. To Preclude Testimony from Defendants' Attorneys

■ Plaintiff has indicated that she intends to elicit testimony from defendants' counsel, including Kevin LeBlang, Norman Simon and Robert Salzberg, regarding the preservation of e-mails and back-up tapes. Defendants claim that such testimony would be cumulative as defendants have already produced documents regarding UBS's official retention policies and the requests made to employees to retain documents. Moreover, the risk that privileged communications could be probed during trial is arguably too great to permit plaintiff to call opposing counsel to testify. I do not see any legitimate need plaintiff

---

**6.** Plaintiff does not intend to introduce evidence of Hillen's e-mail. *See* Pl. Opp. at 7, n. 5.

**7.** Defendants also seek to exclude Chapin's use of the expression "yellow fever" when referring to Asian women. This issue has been addressed in Part II.A of this Opinion.

may have for calling opposing counsel given the extensive discovery on the issue of e-mail and back-up tape preservation and retention. Plaintiff is therefore precluded from calling LeBlang, Simon and Salzberg as witnesses. *See In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 160 (2d Cir.2002) (quashing grand jury subpoena directed to attorney and finding that work product establishes a "zone of privacy for an attorney's preparation to represent a client in anticipation of litigation"); *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 WL 1627170, at *6 (S.D.N.Y. July, 23, 2004) (holding that the risk of encountering work product and privilege issues and the amount of discovery already conducted are factors courts must consider in determining whether counsel may be deposed).

SO ORDERED.