2008 DNH 168

Nicole L'ETOILE

v.

NEW ENGLAND FINISH
SYSTEMS, INC.

Civil No. 06–cv–390–JL.

United States District Court,
D. New Hampshire.

Sept. 10, 2008.

Heather M. Burns, Upton & Hatfield LLP, Concord, NH, for Nicole L'Etoile.

Charla B. Stevens, McLane Graf Raulerson & Middleton, Manchester, NH, for New England Finish Systems, Inc.

### ORDER

JOSEPH N. LAPLANTE, District Judge.

The plaintiff, Nicole L. L'Etoile, has sued her former employer, New England Finish Systems, Inc. ("New England Finish") for discrimination, including a hostile work environment, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1), 2000–e–3(a). L'Etoile worked as a taper for the company, a drywall contractor, from early 2002 until her termination

in the spring of 2004. This court has jurisdiction under 28 U.S.C. § 1331 (federal question). Each side has filed a number of motions in limine seeking to exclude certain evidence from the upcoming trial. The court heard argument on these motions at the final pre-trial conference in this matter on September 4, 2008. Based on those arguments, as well as those set forth in the parties' filings, the court makes the following rulings on the motions in limine.

### I. L'Etoile's motion to exclude the finding of "No Probable Cause" by the New Hampshire Human Rights Commission

Prior to L'Etoile's commencement of this action, she had filed a charge of discrimination against New England Finish with the New Hampshire Human Rights Commission ("NHHRC"), alleging, *inter alia,* the same unlawful conduct. Following an investigation, the NHHRC found that there was no probable cause for the charge. That finding, unaccompanied by any explanation, analysis, or subsidiary findings, was announced in a letter to the parties' counsel. The Equal Employment Opportunity Commission ("EEOC") subsequently adopted the NHHRC's finding, again, without any accompanying explanation. L'Etoile moves to exclude any evidence of the NHHRC's or the EEOC's finding under Rule 403 of the Federal Rules of Evidence.[1]

Relevant "evidence may be excluded if its probative value is substantially out-

---

1. New England Finish argues that, under the prevailing law, such "findings should be admitted when they are deemed to be trustworthy." It is true that the Federal Rules of Evidence recognize an exception to the hearsay rule, in civil actions, for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.

R.Evid. 803(8)(C). But the "trustworthiness" of agency findings resolves only the hearsay problem; it does not also mean that they are admissible notwithstanding Rule 403. *See, e.g., Paolitto v. John Brown E. & C., Inc.,* 151 F.3d 60, 64–65 (2d Cir.1998) (noting that, with reference to EEOC reports under Rule 803(8)(C), "the fact that evidence is within an exception to the hearsay rule does not by itself make it admissible per se").

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The First Circuit has upheld the use of this rule to exclude a finding of "reasonable grounds to believe that unlawful discrimination has occurred" by the Maine Human Rights Commission from the ensuing trial of the discrimination claim because "such an agency determination, unaccompanied by relevant facts, tends to be more prejudicial than probative." *Patten v. Wal–Mart Stores E., Inc.,* 300 F.3d 21, 26–27 (1st Cir.2002).

■ This court agrees with that approach here. Neither the NHHRC's nor the EEOC's "finding" of no probable cause for L'Etoile's complaint offers any explanation of why or how the agency reached that conclusion, giving the findings little probative value. New England Finish responds that the findings likewise carry little risk of unfair prejudice, but, assuming that is true, other criteria under Rule 403—"considerations of undue delay, waste of time, or needless presentation of cumulative evidence"—weigh heavily against admitting them. That much is clear from the briefing on the motion in limine, which consists largely of L'Etoile's attacks on, and New England Finish's defense of, the methods of the NHRRC's investigator. Allowing this battle to play out at trial would expend significant resources for lit-

tle benefit. As the court of appeals observed in *Patten,* the conclusory findings have little probative force anyway, and would distract the jury from its ultimate task, which is to decide whether the alleged acts of discrimination and retaliation in fact occurred, not whether the NHHRC correctly decided that they likely did not.

A number of courts have relied on similar concerns in excluding, or upholding the exclusion of, agency resolutions of employment discrimination charges, i.e., the "likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency." *Paolitto,* 151 F.3d at 65; *see also, e.g., Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1347 (3d Cir.2002); *Hall v. W. Prod. Co.,* 988 F.2d 1050, 1058 (9th Cir.1993); *Tulloss v. Near N. Montessori Sch., Inc.,* 776 F.2d 150, 153–54 (7th Cir. 1985); *Johnson v. Yellow Freight Sys., Inc.,* 734 F.2d 1304, 1309–10 (8th Cir.1984); *Cook v. Hatch Assocs.,* No. 02–065A, 2007 WL 1267023, at *2–*3 (W.D.N.Y. Apr.30, 2007). In line with these and other like decisions, the court grants L'Etoile's motion to exclude evidence of the findings of no probable cause by the NHHRC and EEOC.[2]

## II. *The parties' motions to exclude events not involving L'Etoile's employment at New England Finish*

L'Etoile seeks to prevent New England Finish from presenting evidence that no

---

**2.** New England Finish points out that L'Etoile has not challenged, and in fact has announced her plans to introduce, certain materials from the NHHRC's investigative file, namely, the investigator's notes of her meetings with New England Finish's employees. Without knowing precisely what these materials are, however, the court cannot rule on their admissibility at this time, because it must "determine, on a case-by-case basis, what, if any, [NHHRC] investigator materials

should be admitted at trial." *Smith v. Mass. Inst. of Tech.,* 877 F.2d 1106, 1113 (1st Cir. 1989) (quoting *Gillin v. Fed. Paper Bd. Co.,* 479 F.2d 97, 99 (2d Cir.1973)). As the court pointed out at the final pre-trial conference, however, it is unlikely that the NHHRC investigator's notes of her interviews with any witnesses in this case would be admissible. *See, e.g., United States v. Casoni,* 950 F.2d 893, 913–14 (3d Cir.1991).

other woman besides her has complained about sex discrimination at the company and that, since she left, another woman has worked there without incident. New England Finish, in turn, seeks to prevent L'Etoile from presenting evidence that women who worked at the company *before* her also experienced sex discrimination. Each side characterizes the other's evidence as irrelevant and unduly prejudicial. *See* Fed.R.Evid. 402, 403.

■■■ There is substantial precedent— including from the First Circuit—recognizing that evidence of an employer's treatment of other employees of the same protected class as the plaintiff is admissible, under Rule 404(b) of the Federal Rules of Evidence, on the question of whether the employer acted with the prohibited discriminatory intent in its actions toward the plaintiff. *See Cummings v. Std. Register Co.,* 265 F.3d 56, 63 (1st Cir.2001); *Brown v. Trs. of Boston Univ.,* 891 F.2d 337, 349– 50 (1st Cir.1989); *see also, e.g., Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1286 (11th Cir.2008); *Ansell v. Green Acres Contracting Co.,* 347 F.3d 515, 520–25 (3d Cir.2003); *Heyne v. Caruso,* 69 F.3d 1475, 1479 (9th Cir.1995); *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir.1990); *Elion v. Jackson,* 544 F.Supp.2d 1, 8–9 (D.D.C.2008); *Zubulake v. UBS Warburg LLC,* 382 F.Supp.2d 536, 544 (S.D.N.Y. 2005). This is true whether the evidence in question reflects favorably or unfavorably on the employer's treatment of those employees, or whether the treatment oc-

curred prior or subsequent to the events of which the plaintiff complains. *See Ansell,* 347 F.3d at 523–24; *Brown,* 891 F.2d at 350; *Elion,* 544 F.Supp.2d at 8–10.[3] As the Supreme Court recently held, "such evidence is neither per se admissible nor per se inadmissible," *Sprint/United Mgmt. Co. v. Mendelsohn,* —— U.S. ——, 128 S.Ct. 1140, 1143, 170 L.Ed.2d 1 (2008), but "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 1147.

Neither party's arguments in support of or objection to the motions in limine address this well-established body of law. Instead, each party takes the internally inconsistent position that its evidence of other women's experiences at New England Finish is relevant, but the other party's is not. For this reason, the court must deny the broad-based motions in limine in large part. This ruling, however, is without prejudice to renewal of the objections to specific examples of the challenged evidence when it is offered at trial, keeping in mind the First Circuit's admonition that such evidence may be admissible even if "it cover[s] different time periods, different supervisors, and different areas of the company." *Cummings,* 265 F.3d at 63. So, before either party attempts to introduce any such evidence, it shall make a detailed proffer as to the nature of the treatment at issue and how it relates to L'Etoile's circumstances and the parties' theories of liability and defense,[4] *see Mendelsohn,* 128 S.Ct. at 1147.

---

**3.** Some of these courts have recognized that, as a logical matter, "[s]ubsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions," but have nevertheless refused to deem subsequent acts irrelevant in all circumstances. *Ansell,* 347 F.3d at 524; *see also Elion,* 544 F.Supp.2d at 9.

**4.** The court also cautions New England Finish that, by offering evidence of how its female employees were treated subsequent to L'Etoile's termination, the company may open the door to evidence that it implemented a sexual discrimination and harassment policy during that time, despite its objection to that evidence as inadmissible proof of a "subsequent remedial measure." Fed.R.Evid. 407.

There is some testimony challenged by New England Finish, however, that is obviously irrelevant to the issue of the company's intent in its actions toward her, namely, evidence of discrimination experienced by other women while working for different companies altogether. L'Etoile offers another theory of relevance in support of some of this testimony: that "[e]vidence of the harassment of third parties can help to prove a legally cognizable claim of a hostile environment." *Hernandez-Loring v. Universidad Metropolitana,* 233 F.3d 49, 55 n. 4 (1st Cir.2000). That is correct, but much of the harassment of other women alleged here, at least as proffered in L'Etoile's objection, does not appear to have ever infected *her* working environment at New England Finish.

Indeed, L'Etoile admits that one of the women she wants to call as a witness to these events, Monique Fuhrmann, never even worked for New England Finish, but maintains that her experiences at other companies are admissible to corroborate L'Etoile's claim that she was hired only when New England Finish had a job where it was required to employ a woman, then laid off as soon as that job ended. It suffices to say that this proffered testimony as to why other employers laid off Fuhrmann is not probative of why New England Finish laid off L'Etoile.

Nor could the sexist comments Fuhrmann—or any of the other women tapers L'Etoile intends to call as witnesses—allegedly heard while working for a different employer have contributed to the hostility of L'Etoile's work environment at New England Finish. Some courts have taken a broad view of "environment" in this context, holding that harassment of co-workers may serve as evidence in a hostile

environment suit, even where it was unknown to the plaintiff. *See Hurley v. Atl. City Police Dep't,* 174 F.3d 95, 114–15 (3d Cir.1999); *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 150–51 (2d Cir.1997); I Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* § 19.IV.B.3, at 1405–06 (4th ed.2007). But even these authorities do not go so far as to suggest that a plaintiff may support her hostile environment claim with evidence that women were harassed while working for other companies; such evidence is relevant to neither the plaintiff's "general work atmosphere," *Perry,* 115 F.3d at 150, nor whether the employer should have been on notice of the harassment of the plaintiff,[5] *Hurley,* 174 F.3d at 111.

Again, what happened to other women at other companies is simply irrelevant to what happened to L'Etoile at New England Finish; it is that defendant, and not the entire drywall industry, that is on trial for sex discrimination. So none of the witnesses will be permitted to testify as to their experiences working for companies besides New England Finish. The company's motion in limine to exclude evidence of events prior to L'Etoile's hiring is granted insofar as it challenges that testimony, including the proffered testimony of Fuhrmann in its entirety.

L'Etoile has a fallback position for introducing the testimony of the other female tapers (besides Furhmann): because, for the most part, they do not specifically say in their proffered statements when they experienced the alleged harassment, and because each of them worked for New England Finish at some point, the harassment may well have occurred during their employ at New England Finish. Thus, L'Etoile's argument goes, New England

---

5. In any event, the parties agreed at the final pre-trial conference that New England Finish's knowledge of the harassment allegedly experienced by L'Etoile at the hands of her foremen is not at issue in this case.

Finish's claim to the contrary is simply "a bare [*sic*] faced assumption that cannot form the basis for the exclusion of this ... testimony." But this argument gets it backwards. As the party seeking to offer this evidence, L'Etoile has the burden of laying the proper foundation for its admissibility, which includes a showing that it is at least marginally relevant because the witnesses experienced the alleged harassment while working for New England Finish, as opposed to an entirely different outfit. Unless she can do so, these witnesses cannot testify about their experiences, because, again, what happened to them at other companies has no relevance to what happened to L'Etoile at New England Finish, or why.[6]

New England Finish also challenges anticipated testimony by Francis Galvin, who employed L'Etoile "[s]ometime between 1980–1991," to the effect that she was an "excellent taper." L'Etoile argues that, "by showing that another employer appraised the value of her work as excellent," this testimony is relevant to rebut New England Finish's defense that it terminated her because of concerns over her performance, rather than because of her sex.

■ This argument essentially concedes that L'Etoile wants to use evidence of her prior acts, i.e., her "excellent" work for another employer, to show that she acted in conformity therewith, i.e., that she did excellent work for New England Finish as well. That is not permitted under Rule 404(b), as courts have ruled in excluding evidence of the quality of the plaintiff's work for prior companies from the trials of employment discrimination claims. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1510–11 (D.C.Cir. 1995); *Zubulake*, 382 F.Supp.2d at 540–41;

*accord Brown*, 891 F.2d at 348 (ruling that evidence of plaintiff's reputation for outstanding work had been erroneously admitted in the trial of her discrimination claim where the defendant had no knowledge of it). So Galvin will not be permitted to testify to the work that L'Etoile—or, for that matter, her sister—did for him prior to their employment at New England Finish. New England Finish's motion is granted insofar as it challenges that proffered testimony.

### III. New England Finish's motion to exclude hearsay statements

New England Finish seeks to exclude what it characterizes as a variety of "hearsay statements" that L'Etoile intends to introduce at trial. In response, L'Etoile argues that the challenged statements either are not offered for their truth, or fit within one of the recognized hearsay exceptions. The court is unconvinced of either theory and, furthermore, sees foundational problems with many of the statements, at least on the record as it stands.

First, New England Finish challenges a number of statements that L'Etoile attributes to her co-workers at the company to the effect that one of her foreman, Roger Hallee (or, in one case, an unspecified "they," which the parties assume was also intended to refer to Hallee) did not want women working there. New England Finish argues that (a) because none of these statements (save one) is attributed to any particular co-worker, they are nothing more than "gossip" devoid of evidentiary value, and (b) all of the statements are inadmissible hearsay anyway.

■ L'Etoile does not respond to the first of these arguments, which is fully

---

**6.** This is not to say that, simply because a witnesses claims to have been harassed while working at New England Finish, her testimony about that experience is automatically admissible. Again, the court must consider "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Mendelsohn*, 128 S.Ct. at 1147.

supported by the First Circuit's decision in *Vazquez v. Lopez–Rosario,* 134 F.3d 28, 34–35 (1st Cir.1998), upholding the exclusion of statements by co-workers that the plaintiff's supervisor disliked him from the summary judgment record on his political discrimination claim because "nothing in the record identifies the sources of this information." Here, L'Etoile has likewise made no effort to identify who the coworkers were or, moreover, how they came to know that Hallee did not like working with women, which presents the same foundational shortcoming.

■ As to New England Finish's hearsay objection, L'Etoile responds that the statements are admissible as evidence of Hallee's character under Rule 803(21)'s hearsay exception. But Hallee's character for sexism is not at issue in this case, making the statements irrelevant. *See Schweitzer–Reschke v. Avnet, Inc.,* 881 F.Supp. 530, 532–33 (D.Kan.1995).[7] As that court reasoned, while Rule 404(b) allows evidence of particular acts to show discriminatory intent in a sex discrimination case, *see also* Part II, *supra,* Rule 404(a) does not permit the use of reputation evidence for that purpose.[8]

■ Second, New England Finish challenges anticipated testimony from other female tapers about discriminatory comments they personally heard. L'Etoile responds that these statements are not being offered for their truth, but to show that the environment at New England Finish was hostile. This theory is correct, *see Noviello v. City of Boston,* 398 F.3d 76, 84–85 & n. 2 (1st Cir.2005), but the statements do not necessarily fit it.[9] As noted in the previous section, the witnesses heard a number of these comments while they were employed by other companies, so they are irrelevant to working conditions at New England Finish. And, as also noted in the previous section, *see* note 6, *supra,* insofar as the comments were heard at New England Finish, each must be analyzed independently for its relationship with what L'Etoile claims to have experienced—i.e., its probative value—before it can be admitted. Before L'Etoile makes a detailed proffer to that effect, she may not elicit or refer to the statements. New England Finish's motion to exclude the statements is granted without prejudice to her making that showing at trial.

7. L'Etoile cites *Jones v. Lyng,* 669 F.Supp. 1108, 1115 (D.D.C.1986), where the court, in making findings and rulings following a bench trial of a whistleblower's claim that he had been fired for complaining about sexual harassment of other employees by his superiors, noted that one of those men "had a widespread reputation ... as a 'womanizer.' " But the court does not appear to have relied on this evidence to find that the superior in question acted in conformity with that reputation and, moreover, did not address whether doing so would be appropriate as a matter of evidence law. It would not be, for the reasons stated in the main text: while Rule 803(21) allows hearsay evidence to prove character, it does so only where character evidence is admissible to begin with, and Rule 404(a) provides that character evidence is not admissible to prove action in conformity therewith. *Jones* does not help L'Etoile.

8. L'Etoile also suggests, in a footnote, that these statements about Hallee's reputation are evidence of a hostile environment. While this theory may have some merit as a general matter, at the moment L'Etoile has not laid the necessary foundation to introduce the statements for that purpose, and they may be excludable under Rule 403 in any event, *see* Part II, *supra.* For now, L'Etoile may not testify or refer to these statements without a ruling from the court that these evidentiary obstacles have been overcome.

9. And one of the statements has an additional layer of hearsay: the anticipated testimony of Ralph Harriman, a representative of L'Etoile's union, as to what "he heard" from female tapers about their experiences. That is inadmissible. *See* Fed.R.Evid. 805.

■ New England Finish separately challenges statements by one of L'Etoile's co-workers at the company, Gill Foley, as to sexist comments that L'Etoile "would have heard" while working there. This is inadmissible speculation. *See* Fed.R.Evid. 602. Though L'Etoile makes no attempt to surmount this objection in her response to the motion in limine, she had previously—in objecting to New England Finish's motion to strike this and similar testimony from the summary judgment record[10]—argued that it was admissible lay opinion testimony. The court of appeals has ruled, however, that it is "wholly inappropriate opinion testimony" for a witness in a sexual harassment case to give "assessments of what [the plaintiff] reported to have happened" as a factual matter. *Bandera v. City of Quincy*, 344 F.3d 47, 54 (1st Cir. 2003); *see also* Fed.R.Evid. 701(a), (b). Foley will not be permitted to give that kind of testimony at trial.[11]

## IV. *L'Etoile's motion to exclude evidence of dismissed claims*

L'Etoile seeks to exclude evidence that, since commencing this action, she has voluntarily dismissed a number of causes of action, including a claim for age discrimination as well as individual discrimination claims against her former foreman and field supervisor. New England Finish responds that the evidence is relevant "to show the nature of [L'Etoile's] claims and that they have changed over time."

There is authority treating statements made in complaints or other pleadings as admissions by a party-opponent, and therefore admissible at trial, even if the statement is withdrawn before then by amendment or otherwise. *See, e.g., Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir.1996); *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 n. 3 (8th Cir.1987); 6 Charles Alan Wright *et al., Federal Practice & Procedure* § 1476, at 558 (2d ed.1990). Nevertheless, the First Circuit—albeit in a slightly different context—has recognized that, because charges "are dismissed for a variety of reasons, many of which are unrelated to culpability," a court may exclude evidence of dismissed charges under Rule 403 where it "serve[s] to confuse the jury rather than to assist it." *United States v. Marrero–Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) (affirming exclusion of evidence that local charges against defendant had been dismissed from his trial on related federal charges). For the moment, at least, this court will take that approach here.

■ New England Finish seeks to introduce evidence that L'Etoile dropped certain claims before trial solely for the purpose of attacking her credibility. As the court of appeals recognized in *Marrero–Ortiz*, however, the fact that L'Etoile

10. The court denied that motion as moot when it ruled that, even without the challenged evidence, L'Etoile had come forward with enough proof to survive summary judgment.

11. The briefing on the motion to strike also raised the issue (briefly revisited at the final pre-trial conference) of whether Foley could testify to harassment he allegedly experienced, as a homosexual male, while working at New England Finish. This testimony would not seem to be probative of the company's alleged intent to discriminate against women, and L'Etoile has not provided any authority to the contrary. Moreover, even if evidence of discrimination on the basis of sexual orientation were probative of intent to discriminate on the basis of sex, the evidence strikes the court as potentially creating unfair prejudice to New England Finish. L'Etoile will not be permitted to introduce this evidence without (a) providing some legal authority to support it and (b) addressing the Rule 403 problem.

has chosen not to pursue certain claims she originally pled does not necessarily indicate anything about that issue. For example, L'Etoile explains that she dismissed the claims against her supervisors in their individual capacity because "the law is clear that there is no individual liability for supervisors under Title VII," not because she changed her story that they engaged in discriminatory behavior. L'Etoile's dismissal of the claims at issue, then, has little if any probative value on the issue of her credibility, but carries significant risk of undue delay and waste of time as the jury hears rebuttal evidence on why she dismissed them—including, presumably, evidence harmful to New England Finish suggesting that claims not being tried had merit in the first place. This court is also concerned that the practice of impeaching parties at trial with claims or defenses they have voluntarily withdrawn will exert a chilling effect on their efforts to narrow the case before trial—efforts that serve the interests of both courts and litigants in conducting efficient litigation. L'Etoile's motion to exclude evidence that she dismissed certain claims before trial is granted.[12]

## V. *New England Finish's motion to exclude events occurring outside the limitations period*

■ Finally, New England Finish challenges evidence of events that L'Etoile personally experienced while working at the company, but which occurred outside of the 300–day limitations period on her claims. This court has already ruled that, because at least one of the events manifesting the alleged hostile work environment occurred within the limitations period, the claim is not time-barred under *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As a result, as that case makes clear, "the entire time period of the hostile environment may be considered ... for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061. New England Finish's motion to exclude evidence of pre-limitations events on that basis is denied, but without prejudice to objecting to particular events on other grounds, if applicable.

### CONCLUSION

For the foregoing reasons, the court takes the following actions on the motions in limine: document nos. 43, 45 46, and 51 are GRANTED (the latter two by assent); document no. 56 is DENIED; document nos. 44 and 47 are DENIED without prejudice as more fully explained in Part II, *supra*; document no. 57 is GRANTED in part and DENIED without prejudice in part as more fully explained in Part II, *supra*; and document no. 55 is GRANTED in part, and GRANTED without prejudice in part, as more fully explained in Part III, *supra.*

**SO ORDERED.**

---

12. The court notes L'Etoile's intention to introduce a statement from New England Finish's answer explaining why L'Etoile was terminated as evidence of shifting rationales for its challenged employment actions, on the theory that the company is now advancing a different explanation. The court can perceive no meaningful distinction between offering a since-abandoned statement from the answer and offering since-abandoned statements from the complaint. L'Etoile therefore risks opening the door to evidence of her abandoned claims if she presents evidence of New England Finish's abandoned defense. On the record as it stands, however, it is unclear whether New England Finish made statements outside its answer giving the since-abandoned explanation for L' Etoile's termination.